522 A.2d 1138

Robert L. SANDERSON and Nola Sanderson, his wife

v.

FRANK S. BRYAN, M.D., LTD. and Carlisle Hospital, Appellants.

Superior Court of Pennsylvania.

Argued Oct. 2, 1986.

Filed March 23, 1987.

Daniel K. Deardorff, Carlisle, for appellants.

Daniel P. Altland, Harrisburg, for appellee.

Before WICKERSHAM *, ROWLEY and TAMILIA, JJ.

## OPINION OF THE COURT

ROWLEY, Judge:

These are consolidated appeals, specially allowed,[1] from a certified, interlocutory discovery order in a medical malpractice action. The issue presented has not been addressed by the appellate courts of this Commonwealth. That issue is whether the Peer Review Protection Act, Act of July 20, 1974, P.L. 564, No. 193, as amended 1978, October 5, P.L. 1121, No. 262, Pa. Stat. Ann. tit. 63 § 425.1 et seq. (Purdon Supp.1986) ("the Act"), is violated by an order which gives a plaintiff access through the discovery process to peer review information that is not directly related to his or her case.

* This decision was reached prior to the resignation of Judge WICKERSHAM.

1. We granted appellants' Petitions for Permission to Appeal as authorized by 42 Pa.C.S.A. § 702(b) (Purdon 1981) because of the importance of the issue involved herein and because of the conflicting decisions of Pennsylvania trial courts interpreting the Peer Review Protection Act.

Plaintiffs Robert and Nola Sanderson instituted this action against Frank S. Bryan, M.D., LTD. and Carlisle Hospital alleging that Mr. Sanderson was admitted to Carlisle Hospital where he was treated by Dr. Bryan for radicular back pain. The Sandersons aver that Dr. Bryan was negligent in performing surgical procedures which resulted in exacerbating Mr. Sanderson's physical problems. They further contend that Carlisle Hospital was negligent in allowing Dr. Bryan to perform surgical procedures beyond the scope of his privileges and in failing to supervise and monitor those surgical procedures.

During discovery, plaintiffs filed a Request for Production of Documents directed to Carlisle Hospital requesting all documents and recordings, other than those relating to their cause of action, maintained by any review organization within the hospital involving the evaluation and review of Dr. Bryan. Carlisle Hospital filed objections to this request, believing such information to be privileged from discovery under the Act. Dr. Bryan filed a petition for a protective order. The trial court denied in part the objections and petition and ordered Carlisle Hospital to produce certain requested documents, i.e., complaints, findings and recommendations. It further ordered that the names and addresses of the patients in any disclosed materials be deleted. Both Carlisle Hospital and Dr. Bryan have appealed from this order contending that the purpose of the Act is to promote peer review activity by protecting the confidential nature of such proceedings, and that this purpose is emasculated by the trial court's decision. Briefs in support of defendants' position have been filed by amici curiae Pennsylvania Medical Society Liability Insurance Company, Pennsylvania Medical Society, and Hospital Association of Pennsylvania.

These appeals involve the interpretation of the Act, particularly section four, entitled "Confidentiality of review organization's records," which provides in part as follows:

The proceedings and records of a review committee shall be held in confidence and shall not be subject to

discovery or introduction into evidence in any civil action against a professional health care provider arising out of the matters which are the subject of evaluation and review by such committee and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such committee or as to any findings, recommendations, evaluations, opinions or other actions of such committee or any members thereof....

§ 425.4.

■ The trial court found that the words "... civil action against a professional health care provider arising out of the matters which are the subject of evaluation and review by such committee ..." limit the scope of the privilege,[2] and held that peer review material concerning the treatment of persons other than the plaintiff are discoverable. We disagree with this interpretation of the Act.

The medical profession exercises self-regulation. The most common form of such regulation in the health care industry is the peer review organization. Hospital peer review organizations are usually composed of physicians who review and evaluate other physicians' credentials and medical practices. Generally, hospital peer review findings and records are protected from public scrutiny either legislatively, or by court decision. The purpose for such protection is to encourage increased peer review activity which will result, it is hoped, in improved health care. *See* Cuneo,

2. In reaching its decision, the trial court relied on the holding in a Dauphin County case, *Bolten v. Holy Spirit Hospital*, 105 Dauph. 40 (1984) which adopted the analysis of a Florida appellate court case, *Segal v. Roberts*, 380 So.2d 1049 (4th Fla. Dist. Ct. App. 1979). We note however, that such reliance is selective. Neither the trial court nor the Dauphin County court addressed the ultimate holding of the Florida court that "... many of the matters sought ... are not subject to discovery as a matter of public policy. The arguments in favor of confidentiality of the records and proceedings of a medical review committee are so compelling that discovery should be allowed only in the most necessitous circumstances." *Id.*, at 1052. There is no evidence in the record before us that the trial court determined that the circumstances of the instant case are "most necessitous."

*Disclosure v. Confidentiality of Hospital Peer Review Committee Reports*, Med. Trial Tech. Q., 172 (1985); Comment, *Medical Peer Review Protection in the Health Care Industry*, 52 Temp. L.Q. 552 (1979). That there are strong policies favoring peer review protection is evidenced by the fact that forty-six states have enacted some type of statutory limitation on the disclosure and use of peer review materials.[3] Though the protection provided differs in degree among the states, typically the privilege extends to peer review committee reports, records, proceedings and testimony. *See* Note, *The Missouri Rule: Hospital Peer Review is Discoverable in Medical Malpractice Cases*, 50 Mo. L.R. 459, 475–76 (1985).

The Pennsylvania legislature first created protection for peer review organizations in 1974. Unfortunately, minimal legislative history regarding the Act was recorded and,

**3.** Ala.Code § 22–21–8(b) (1984); Alaska Stat. § 18.23.030 (1981); Ariz. Rev.Stat.Ann. § 36–445.01 (Supp.1975–84); Ark.Stat.Ann. § 28–934 (1979); Cal.Evid.Code § 1157 (West Supp.1985); Colo.Rev.Stat.Ann. § 13–21–110(1) (1973 & Supp.1984); Conn.Gen.Stat.Ann. § 19a–25 (West Supp.1984); Del.Code Ann. tit. 24, § 1768 (1981); Fla.Stat.Ann. § 768.40(4) (West Supp.1984); Ga.Code Ann. § 88–1908 (Supp.1984); Hawaii Rev.Stat. § 624–25.5 (Supp.1983); Idaho Code § 39–1392b (1977 & 1984 Supp.); Ill.Ann.Stat. ch. 110 § 8–2101 (1984); Ind.Code Ann. § 16–4–3–1 (Burns 1983); Iowa Code Ann. § 135.42 (West 1972); 1984 Kan.Sess.Laws ch. 238 § 7(c); Ky.Rev.Stat. § 311.377(2) (1983); La.Rev.Stat.Ann. 13 § 3715.3 (West Supp.1984); Me.Rev.Stat.Ann. tit. 24 § 2510(3) (1964); Md. Health Occ. Code Ann. § 14–601(d) (1981 & Supp.1984); Mich.Comp.Laws Ann. § 333.2632 (West 1980); Minn. Stat.Ann. § 145.64 (West Supp.1984); Miss.Code Ann. § 41–63–9 (1972 & Supp.1984); Mo.Ann.Stat. § 537.035.4 (Vernon Supp.1985); Mont. Code Ann. §§ 50–16–203, 50–16–205 (1983); Neb.Rev.Stat. § 71–2048 (1981); Nev.Rev.Stat. § 49.265 (1981); N.H.Rev.Stat.Ann. § 151:13–a (Supp.1983); N.J.Stat.Ann. § 2A:84A–22.8 (West Supp.1984–85); N.M. Stat.Ann. § 41–9–5 (1982 Supp. Pamphlet); N.Y.Admin.Code tit. 10 § 405.24(k) (1984); N.C.Gen.Stat. § 131E–95 (Supp.1983); N.D.Cent. Code § 23–01–02.1 (Supp.1983); Ohio Rev.Code Ann. § 2305.251 (Page 1983); Okla.Stat.Ann. tit. 63, § 1–709 (West 1984); Or.Rev.Stat. § 41.675 (1983); Pa.Stat.Ann. tit. 63 § 425.4 (Purdon Supp. 1984–85); R.I.Gen.Laws § 5–37.3–7 (Supp.1984); S.D. Codified Laws Ann. § 36–4–26.1 (1977); Tex.Rev.Civ.Stat.Ann. 4447d § 3 (Vernon 1973); Vt.Stat.Ann. tit. 18, §§ 1958–1960 (Supp.1984); Va.Code § 8:01–581.17 (1984); Wash.Rev.Code Ann. § 4.24.250 (Supp.1963–1985); W.Va. Code § 30–3C–3 (Supp.1984); Wis.Stat.Ann. § 146.38 (West Supp. 1975–1984); Wyo.Stat. § 35–2–602 (1977).

*See also* Note, 50 Mo.L.R. at 475–77.

since then, legislative and judicial activity concerning the Act has been limited to the 1978 amendment to include professional health care providers within the Act's protection, and a few conflicting trial court decisions interpreting the Act.[4] Our efforts to interpret the Act, however, are not entirely thwarted by a lack of history or authority. A major concern of the legislature when it created the Act was confidentiality. "The purpose of the bill is to provide protection to those persons who give testimony to peer review organizations." Hearing on H.B. No. 1729, 158 Pa. Legis. J.—House at 4438 (1974) (statement of Representative Wells). The words prefacing the Act also provide evidence of legislative intent: "Providing for the increased use of peer review groups by giving protection to individuals and data who report to any review group." H.B. 1729, Act of July 20, 1974, P.L. 564, No. 193. More recently, this Court held that "[t]hrough these immunity and confidentiality provisions [§§ 425.3, 425.4] ... the Legislature has sought to foster free and frank discussion by review organizations." *Steel v. Weisberg,* 347 Pa.Super. 106, 110, 500 A.2d 428, 430 (1985).

We are bound to ascertain the intent of the legislature in enacting the Peer Review Protection Act as we find the confidentiality section at issue in this appeal to be unclear. *Habecker v. Nationwide Ins. Co.,* 299 Pa.Super. 463, 445 A.2d 1222 (1982). The rules of statutory construction provide that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.A. § 1921(a) (Purdon Supp.1985). Each provision of the statute must be given full effect, if possible. *Id.* When the words of the statute are not explicit, however, the intent of the General Assembly may be ascertained. *Id.* § 1921(c).

4. Cases upholding protection: *Schwartz v. Tri-County Hospital,* 74 Pa.D. & C.2d 52 (1975); *Holiday v. Klimowski,* 75 Pa.D. & C.2d 408 (1976); *Bandes v. Klimowski,* 3 Pa.D. & C.3d 11 (1977); *Obenski v. Brooks,* 7 Pa.D. & C.3d 253 (1978). Cases permitting discovery: *Bolten v. Holy Spirit Hospital,* 105 Dauph.Co.Rep. 40 (1984); *Trent v. Lancaster General Hospital,* 70 Lanc.L.Rev. 170 (1986).

In its brief, appellant Carlisle Hospital argues that the portion of the Act at issue can only be read to "disallow discovery of any materials *relating to the committee's purposes.*" (Brief at 9) (emphasis in the original). The committee's purposes are enunciated in the definition of "Review Organization," i.e., to (1) evaluate and improve the quality of health care; (2) reduce morbidity or morality; (3) establish and enforce guidelines designed to keep the cost of health care within reasonable bounds. § 425.2. Appellant Dr. Bryan urges this Court to adopt the reasoning of other jurisdictions with peer review statutes substantially similar to Pennsylvania's which interpret the statute to provide protection for peer review materials concerning plaintiff as well as other patients.[5] Both appellants place great weight on the words "[t]he proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery...." § 425.4. The Sandersons and the trial court contend that this privilege is limited by the words "... in any civil action ... arising out of the matters which are the subject of evaluation and review by such committee...." *Id.* The trial court specifically found that the protection is limited to matters reasonably associated with plaintiff's cause of action. Therefore, all other proceedings, records, etc. of the peer review organization concerning patients other than plaintiff are not protected and thus, are discoverable.

We find that, as applied, this interpretation leads to an unreasonable and impractical result. Ultimately, depending upon the identity of the plaintiff, all records of all peer review proceedings would be discoverable. What would not be discoverable by one plaintiff, i.e., peer review materials reasonably associated with his or her cause of action, would be discoverable by another plaintiff. Hence, the confidential nature of the peer review proceedings would be obliter-

5. *Hollowell v. Jove,* 247 Ga. 678, 279 S.E.2d 430 (1981); *Morse v. Gerity,* 520 F.Supp. 470 (D.Conn.1981); *Gates v. Brewer,* 2 Ohio App.3d 347, 442 N.E.2d 72 (1981); *Shelton v. Morehead Memorial Hosp.,* 76 N.C.App. 253, 332 S.E.2d 499 (1985).

ated. This result flies in the face of legislative intent and renders the Act senseless.

■ Moreover, the trial court has misapplied its own interpretation. According to the trial court, peer review matters reasonably associated with plaintiff's cause of action are privileged. In the case *sub judice*, plaintiffs maintain a cause of action against Carlisle Hospital alleging that the hospital was negligent in allowing Dr. Bryan to perform surgical procedures when it knew or had reason to know of Dr. Bryan's failure to exercise proper care and judgement. Under the trial court's interpretation, all matters reasonably associated with this cause of action are not discoverable. Such matters logically would include complaints against Dr. Bryan not only by plaintiffs, but by other patients as well. Nonetheless, the trial court has ordered Carlisle Hospital to produce complaints by patients other than plaintiffs. Thus, the trial court's interpretation not only leads to a result which is inconsistent with the intent of the legislature, it is difficult to apply.

In construing the language of a statute, we must presume that the legislature intended every word thereof to be meaningful. 1 Pa.C.S.A. § 1922(2); *Commw., Dep't of Transp. v. Pennsylvania Human Relations Comm.*, 510 Pa. 401, 508 A.2d 1187 (1986). Thus, we acknowledge that the words found by the trial court to limit the peer review privilege must be given effect; after all, had the legislature intended the privilege to be absolute, it could have simply left these words out of the statute. However, another presumption in ascertaining legislative intent is that the legislature does not intend a result which is absurd, impossible of execution or unreasonable. 1 Pa.C.S.A. § 1922(1); *Lehigh Valley Coop. Farmers v. Commw., Bureau of Employment Sec.*, 498 Pa. 521, 447 A.2d 948 (1982). As previously discussed, the trial court's interpretation of the Act leads to a result which is unreasonable.

Moreover, such interpretation conflicts with a third presumption, i.e., that the legislature does not intend to violate the constitutions of either the United States or of this

Commonwealth. 1 Pa.C.S.A. § 1922(3). Specifically, by allowing a plaintiff access to the medical records of other patients, the right to privacy of those other plaintiffs is violated. This fundamental right, older than the Bill of Rights, is protected by both our federal and state constitutions. *See* Pa. Const. art. I, § 1, art. III, § 32; U.S. Const. amends. I, IV, V, IX and XIV; *Fischer v. Dep't of Public Welfare*, 85 Pa.Cmmw. 215, 235, 482 A.2d 1137, 1146 (1984) (citations omitted). Our Supreme Court extensively discussed the foundation of this right in *In Re B*, 482 Pa. 471, 394 A.2d 419 (1978), and held that "the protection extends not only to the home ... but also to the doctor's office, [and] the hospital ..." *Id.*, 482 Pa. at 480, 394 A.2d at 424. In a more recent opinion, the Court further held that this protected interest in privacy "... is in the nature of freedom from disclosure of personal matters; and it is constitutionally based." *Denoncourt v. Commw., State Ethics Comm'n*, 504 Pa. 191, 198, 470 A.2d 945, 948 (1983).

In the case now before us, the trial court has cited no authority for its holding allowing review of the medical records of patients other than plaintiff. Though it has courteously ordered that the names and addresses of the patients in the disclosed materials be deleted, we are not satisfied that such an invasion into the personal matters of those other patients is warranted. Moreover, since there is no requirement either legislatively or by *stare decisis* that the names and addresses of the patients be deleted, there is no guarantee that another trial court will be so gracious.

For all of these reasons, we find that the trial court has misinterpreted the Act. We now must determine what the proper interpretation of the Act is as it relates to the issue before us.

Where provisions of a statute appear to be ambiguous or inconsistent, the intention of the legislature may be determined by examining the occasion, reason or necessity for the law. Thus, we should look to the circumstances that existed at the time of the enactment and deter-

mine the mischief sought to be remedied or the object to be obtained in its passage.

*Pennsylvania Labor Relations Bd. v. State College Area School Dist.,* 461 Pa. 494, 502, 337 A.2d 262, 266 (1975).

Our research of the history of the Act has revealed a draft of section four which was the subject of discussion at the May 7, 1974 hearing by the legislature. This draft differs materially from the Act as enacted. Section four thereof reads:

All data and information acquired by a review organization, in the exercise of its duties and functions, shall be held in confidence and shall not be disclosed to any person except to the extent that may be necessary to carry out the purposes of the review organization and shall not be admissible as evidence in any other civil proceeding.

Hearing on H.B. No. 1729, 158 Pa. Legis. J.—House at 4438 (1974). The difference between this draft and the original enactment [6] is that the draft does not contain the language at issue in this appeal: "... civil action ... arising out of the matters which are the subject of evaluation and review by such committee...." § 425.4. We must assume therefore, that the language was added in an effort to eliminate a problem with the draft.

The discussion at the May 7, 1974 hearing centered around the potential for misusing the peer review process to make false charges against the person subject to review. Though such action is prohibited under section three of the Act, a strict application of section four, as drafted, would have prohibited the person being reviewed from discovering the nature of the charge against him as well as the identity of the person making the charge. Concern was expressed that a "star-chamber type inquiry" would evolve. Hearing, at 4438–39 (statement of Representative McCue). Thus, we believe that the addition of the clause now at issue was designed to respond to the concern of the legislature in its May 7, 1974 hearing.

6. The 1978 amendment resulted in minimal changes to section four of the original Act and such changes are not relevant to this discussion.

■ We hold that the Act, as applied to the medical malpractice case before us protects the material sought by plaintiffs in their discovery request to Carlisle Hospital. We note that this interpretation does not result in immediate summary judgment for the defendants. "The plaintiff will still have access to his own medical records as well as any other relevant business records. Persons with first-hand knowledge of [the] incident could be compelled to testify. Finally, the malpractice victim can hire his own expert witness to evaluate and give his opinion of the disclosed facts." Note, 50 Mo.L.R. at 475 (citation omitted).

Order reversed and case remanded. Jurisdiction is relinquished.