534 A.2d 814

**Marc STEEL, D.D.S.**

v.

**Steven L. WEISBERG, D.D.S.**

**Appeal of Charles R. WEBER, D.D.S.**

Superior Court of Pennsylvania.

Argued June 16, 1987.

Filed Nov. 13, 1987.

Reargument Denied Jan. 6, 1988.

Thomas A. Beckley, Harrisburg, for appellant.

Donald A. Browns, Media, for appellee.

Before MONTEMURO, KELLY and CERCONE, JJ.

KELLY, Judge:

This case involves a question of whether certain information is protected from discovery by the Peer Review Protection Act.[1] The trial court found that the information sought is not protected by the Act, and issued a contempt order for appellant's refusal to produce the information at deposition. We affirm.

In March 1983, the plaintiff-appellee, Marc Steel, D.D.S., commenced this defamation action against Steven L. Weisberg, D.D.S. During the course of discovery, plaintiff Steel obtained a copy of a letter written by Weisberg to appellant, Dr. Charles R. Weber, in Weber's capacity as chairman of the Chester–Delaware Patient Relations Committee of the Pennsylvania Dental Association.[2] Steel filed a notice to take the deposition of Weber, and in response, Weber filed a motion for protective order. On October 5, 1984, the trial court denied the motion.[3]

On April 25, 1986, Steel filed a motion for an order directing Weber to answer questions regarding the letter. On September 12, 1986, the trial court entered an order directing appellant to appear and answer the questions. The deposition of Dr. Weber was scheduled for December 8, 1986; at that time, Weber appeared and again refused to answer questions concerning the letter. As a result, Steel filed a petition for contempt. Weber filed an answer, and, following a hearing on the matter, the trial court entered the following order:

> And now, to wit, this 22nd day of December, 1986, it is hereby ORDERED that Dr. Charles R. Weber is found to be in Civil Contempt of Court and is fined the sum of $25.00 conditionally.

1. Act of July 20, 1974, P.L. 564, No. 193, as amended October 5, 1978, P.L. 1121, No. 262, 63 P.S. §§ 425.1–.4 (Purdon Supp.1987).

2. The committee is a peer review committee as defined in the Peer Review Protection Act, 63 P.S. § 425.2.

3. Appellant Weber appealed the denial to this Court, which quashed the appeal as interlocutory. *Steel v. Weisberg,* 347 Pa.Super. 106, 500 A.2d 428 (1985).

Dr. Charles R. Weber may purge himself of Contempt and avoid the necessity of paying said $25.00 by answering all the questions provided to him at his depositions of February 21, 1986 and December 8, 1986.

The above Order has been entered after a Rule attaching Dr. Charles R. Weber was entered requiring his appearance to answer why a Rule Absolute should not be entered that he be found in Contempt; after Answer to said attachment by Dr. Charles R. Weber and Hearing thereon on December 18, 1986; after an Oral Rule Absolute was entered upon Dr. Charles R. Weber; and, after hearing on the Contempt citation and Rule Absolute on December 18, 1986.

It is this order which is now before us on appeal.

Before considering the challenge raised by appellant Weber, we must determine whether the December 22, 1986 contempt order is a final and appealable order.

■ Unless sanctions are imposed, an order declaring a party in contempt is interlocutory. *McManus v. Chubb Group of Insurance Companies*, 342 Pa.Super. 405, 493 A.2d 84 (1985); *In Re Grand Jury Subpoena to Kevin Koll*, 311 Pa.Super. 212, 457 A.2d 570 (1983); *Hester v. Bagnato*, 292 Pa.Super. 322, 437 A.2d 66 (1981). Unless the order of contempt is final, this Court lacks jurisdiction to entertain the appeal. *McManus, supra; Guisler v. Alexander*, 307 Pa.Super. 219, 453 A.2d 4 (1982). A threat to hold a party in contempt at some future time if a decree is not performed or a threat to impose sanctions in the future is neither final nor appealable. *See McManus, supra; Brodsky v. Philadelphia Athletic Club*, 277 Pa.Super. 549, 419 A.2d 1285 (1980).

■ The order in the instant case declared appellant in contempt and imposed a twenty-five dollar ($25.00) "conditional" fine; appellant was given the opportunity to purge himself of the contempt citation, as well as the obligation to pay the fine, by providing the requested information. We find that the order is final and immediately appealable.

Although appellant Weber was given the opportunity to remove the sanction, such a feature is typical of civil contempt orders, which must contain "conditions on the sentence so as to permit the contemnor to purge himself; he must be allowed to carry the keys to the jail in his pocket." *Markey v. Marino*, 361 Pa.Super. 92, 98, 521 A.2d 942, 945 (1987); *see also Knauss v. Knauss*, 387 Pa. 370, 379, 127 A.2d 669, 673 (1956). Here, no further order would be necessary before the sanction would become effective. The order is properly before us for review.

A brief recitation of the facts is necessary. As part of the discovery in his defamation action, Steel obtained a letter dated October 14, 1982, written by Weisberg to Dr. Weber. In the letter, Weisberg accuses Steel of "stealing [Weisberg's] patients," "other forms of theft," and concludes, "[w]ith regards to Dr. Steel's conduct as a discredit to the profession, I strongly urge that someone with such an obvious lack of integrity be stripped of any licenses to practice dentistry now or in the future." (Letter of 10/14/82 at 3–4). In response to Weber's motion for a protective order, Steel stated his intent to limit questioning so as to gain only information regarding the publication of the allegedly defamatory letter to others:

> The Plaintiff has no intention of asking any questions concerning any testimony or proceedings before any dental committee. The only questions will be with respect to the receipt of the letter provided by the Defendant and the names of those individuals to whom the letter was distributed.

(Plaintiff's Answer to Motion for Protective Order at 2). At the scheduled depositions, the questions were in fact limited to the matters described above; the order appealed from directs Weber to answer these questions. With this factual background in mind, we turn to the issue raised on appeal.

■ Appellant contends that the information sought is protected from discovery by the Peer Review Protection Act ("Act"). Section four of the Act, entitled "[c]onfidentiality of review organization's records," provides in part:

*The proceedings and records of a review committee*
shall be held in confidence and *shall not be subject to
discovery* or introduction into evidence in any civil action
against a professional health care provider arising out of
the matters which are the subject of evaluation and
review by such committee *and no person who was in
attendance at a meeting of such committee shall be
permitted or required to testify in any such civil action
as to any evidence or other matters produced or
presented during the proceedings* of such committee or
as to any findings, recommendations, evaluations, opin-
ions or other actions of such committee or any members
thereof. . . .

63 P.S. § 425.4 (emphasis added).

Preliminarily, we must determine whether appellee Steel
seeks discovery of the "proceedings" or "records" of a
review committee. The trial court found that the Patient
Relations Committee is a peer review committee as defined
in the Act, and neither party disputes this contention on
appeal. Assuming that a formal meeting regarding Dr.
Weisberg's letter did not take place,[4] we must determine
whether Dr. Weber's receipt of Weisberg's letter and his
possible dissemination of the letter to other committee
members constitutes a "proceeding" of the review commit-
tee.

The Act nowhere defines the term "proceeding" which is
used in Section four of the Act. However, we are per-
suaded that the logical interpretation is to construe "pro-
ceedings" as including the receipt, by a committee member
in his official capacity, of a claim regarding a health care
provider. The actions of a peer review committee may
frequently begin with a claim against a health care provid-
er, referred to one of the committee members. We find
that the successful transmission of a letter initiating the
peer review process, and distribution of that letter to other

---

4. As Dr. Weber refused to answer any questions in this regard, we are
unable to ascertain from the existing record whether a formal com-
mittee meeting did in fact take place. We shall assume *arguendo* that
a formal committee meeting did not take place.

committee members, constitutes a proceeding of a peer review committee.

As set forth, *supra,* Section four of the Act states the general rule that "[t]he proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery ...". However, Section four of the Act continues:

> Provided, however, that information, *documents,* or records *otherwise available from original sources are not to be construed as immune from discovery or use in any such civil action* merely because they were presented during proceedings of any such committee, *nor should any person ... who is a member of such committee be prevented from testifying as to matters within his knowledge,* but the said witness cannot be asked about his testimony before such a committee or opinions formed by him as a result of said committee hearings.

(Emphasis added).

■ Appellee Steel argues that the information sought by the discovery request, limited to the questions of whether the letter was received and to whom it was distributed, pertains to "matters within [Dr. Weber's] knowledge," and is therefore, within the exception to immunity from discovery set forth in Section four of the Act. Appellant Weber would interpret the provision as excepting only those matters which the committee member learned of through non-committee activity; according to appellant's argument, since Weber learned of the receipt and distribution of the letter while serving in his capacity as chairman of the Patient–Relations Committee, the information is not "within [Dr. Weber's] knowledge," as contemplated by the statute, and the exception to immunity from discovery therefore does not apply.

As the relevant provision is susceptible of more than one interpretation, we find that the provision contains an ambiguity. When faced with such an ambiguity, we are bound to ascertain the intent of the legislature. The rules of statutory construction provide that "when the words of a

statute are not explicit, the intent of the General Assembly may be ascertained," 1 Pa.C.S.A. § 1921(c), and "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.A. § 1921(a); *Hodge v. Hodge*, 513 Pa. 264, 270, 520 A.2d 15, 21 (1986). In *Pennsylvania Labor Relations Bd. v. State College Area School District*, 461 Pa. 494, 337 A.2d 262 (1975), our Supreme Court stated:

> Where provisions of a statute appear to be ambiguous or inconsistent, the intention of the legislature may be determined by examining the occasion, reason or necessity for the law. Thus, we should look to the circumstances that existed at the time of the enactment and determine the mischief sought to be remedied or the object to be obtained in its passage.

461 A.2d at 502, 337 A.2d at 266; *see also* 1 Pa.C.S.A. § 1921(c).

Our task of ascertaining the intent of the legislature is hampered by the fact that minimal legislative history regarding the Act was recorded prior to its enactment in 1974. Furthermore, only one appellate decision has attempted to interpret the Act,[5] and no cases have construed the exclusion provision which is at issue in the case at bar. However, we are not entirely without guideposts to aid us in our task. The words prefacing the Act provide evidence of a general legislative intent to preserve confidentiality: "[p]roviding for the increased use of peer review groups by giving protection to individuals and data who report to any review group." H.B. 1729, Act of July 20, 1974, P.L. 564, No. 193. "The purpose of the bill is to provide protection to those persons who give testimony to peer review organizations." Hearing on H.B. No. 1729, 158 Pa.Legis.J.–House at 4438 (1974) (Statement of Representative Wells). "Through these immunity and confidentiality provisions [§§ 425.3, 425.4] ... the Legislature has sought to foster

---

**5.** *See Sanderson v. Frank S. Bryan, M.D., LTD.*, 361 Pa.Super. 491, 522 A.2d 1138 (1987), discussed further, *infra* at fn. 6.

free and frank discussion by review organizations." *Steel v. Weisberg, supra,* 500 A.2d at 430.

However, it is clear that the legislature did not intend to provide unlimited protection to persons giving testimony or providing information to peer review organizations; Section 3 of the Act indicates that the protection from liability will not be extended to individuals who deliberately provide a peer review committee with false information. Section 3 provides in part:

§ 425.3.  **Immunity from liability**

(a) Notwithstanding any other provision of law, no person providing information to any review organization shall be held, by reason of having provided such information, to have violated any criminal law, or to be civilly liable under any law, unless:

\*      \*      \*      \*      \*      \*

(2) such information is false and the person providing such information knew, or had reason to believe, that such information was false.

Thus, the legislature did not intend for the Act to serve as a haven from civil liability for individuals who deliberately provide committees with false information.[6]  With this ob-

---

6.  In the recent case of *Sanderson v. Bryan, supra,* a panel of this Court addressed the question of whether Section four of the Act prohibits a medical malpractice plaintiff from discovering hospital peer review information which is not associated with plaintiff's cause of action, including complaints against the defendant doctor by other patients; the Court concluded that discovery of such information is prohibited. The panel sought to ascertain the meaning of the clause in Section 4 which states that the records of a review committee shall not be discoverable in an action against a health care provider "arising out of the matters which are the subject of evaluation and review by such committee ...". Regarding the legislative history of section four, the panel observed:

The discussion at the May 7, 1974 hearing centered around the potential for misusing the peer review process to make false charges against the person subject to review. Though such action is prohibited under section three of the Act, a strict application of section four, as drafted, would have prohibited the person being reviewed from discovering the nature of the charge against him as well as the identity of the person making the charge. Concern was expressed that a 'star-chamber type inquiry' would evolve. Hearing, at 4438–39 (statement of Representative McCue). Thus, we believe that the

servation in mind, we look again to Section 4 of the Act. Appellant requests certain limited facts so as to prove the publication of the false information to committee members. The element of publication is, of course, a necessary element in a defamation action. 42 Pa.C.S.A. § 8343(a)(2). If we were to adopt the construction urged by appellant Weber, the allegedly defamed individual would not be able to prove his case, and the Act would serve to protect from civil liability those persons who knowingly provide the committee with false information. We find that we must reject this interpretation.

In ascertaining the intent of the legislature, we must consider the practical consequences of a particular interpretation. 1 Pa.C.S.A. § 1921(c)(6); *Lehigh Valley Co–Op. Farmers v. Com., Bureau of Employment Sec.,* 498 Pa. 521, 447 A.2d 948 (1982); *Tyler v. King,* 344 Pa.Super. 78, 496 A.2d 16 (1985); *Royal Indemnity Co. v. Adams,* 309 Pa.Super. 233, 455 A.2d 135 (1983). We must presume that the General Assembly intended the entire statute to be effective and certain; in construing a statute, sections of the statute must be construed with reference to the entire statute, and not alone. 1 Pa.C.S.A. § 1922(2); *In Interest of Jones,* 286 Pa.Super. 574, 429 A.2d 671 (1981). We must further presume that the General Assembly did not intend a result that is absurd, impossible of execution, or unreasonable. 1 Pa.C.S.A. § 1922(1); *Lehigh Valley Co–Op. Farmers v. Com., Bureau of Employment Security, supra.*

Applying the rules of statutory construction to the instant case, we observe that the practical effect of the construction advocated by appellant would be to protect from civil liability individuals who knowingly give false information to peer review committees. The provisions of Section three must be construed with reference to the other relevant portions of the statute, including the immunity from liability provisions. According to the express language of those provisions, it is clear that the legislature did

addition of the clause now at issue was designed to respond to the concern of the legislature in its May 7, 1974 hearing.
522 A.2d at 1142–3.

not intend for the Act to protect such individuals from civil liability. We therefore reject appellant's proposed construction, as it would generate an unreasonable result, contrary to the intent of the legislature. Instead, we conclude that the confidentiality provisions of the Peer Review Protection Act do not bar the appellee from discovering the limited information requested in this case.[7]

The trial court acted properly in finding that the information requested is discoverable, and in holding the appellant in contempt for failure to produce the requested information. Accordingly, the order imposing sanctions for contempt is affirmed.

Order AFFIRMED.

---

**7.** We further observe that this construction does not conflict with the underlying purpose of a peer review committee, which is to improve the quality of services provided by health care professionals. 63 P.S. § 425.2.