**Judy CORRIGAN**

v.

**METHODIST HOSPITAL and
Sanford Davne, M.D. and
Donald Myers, M.D.**

Civ. A. No. 94–CV–1478.

United States District Court,
E.D. Pennsylvania.

July 11, 1994.

Joseph L. Messa, Jr., Mark W. Tanner, Giuliana F. Robertson, Ominsky, Welsh & Steinberg, P.C., Philadelphia, PA, for plaintiff.

Nancy A. Nolan, Post & Schell, P.C., Philadelphia, PA, for Methodist Hosp.

Kevin Wright, Wright, Young & McGilvery, P.C., Plymouth Meeting, PA, for Sanford H. Davne, M.D.

Christine A. Egan, Daniel F. Ryan, III, O'Brien & Ryan, Plymouth Meeting, PA, for Donald Myers, M.D.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

The instant medical malpractice case is presently before this court upon motion of the defendants for a protective order precluding the plaintiff from discovering, via deposition of the Hospital's Chief Executive Officer, or otherwise, the findings, recommendations, evaluations, opinions or other actions of the hospital's Peer Review Organizations and upon the plaintiff's cross-motion to strike the hospital defendant's objections to the plaintiff's Request for Production of Documents. For the reasons which follow and to the extent that the plaintiff seeks to discover information and materials which are protected by the Pennsylvania Peer Review Protection Act, the motion for protective order is granted and the objections are sustained.

Briefly stated, the matter at bar arises out of the alleged misdiagnosis and treatment of a meningiomal tumor located in the plaintiff's thoracic spine by the defendant doctors Davne and Myers and what plaintiff hereby contends was their performance of unnecessary lumbar fusion surgery at the defendant Methodist Hospital in March, 1992. In addition to alleging that Drs. Davne and Myers were negligent in their misdiagnosis and treatment, Ms. Corrigan also claims that all of the defendants failed to advise her that they planned to utilize the Acromed VSP plate and pedicle screw system in the surgery, that the defendant doctors had a financial interest in the company which manufactured that screw system or that the use of the said plate and screw system in such surgeries was still considered to be investigational by the FDA. Plaintiff's complaint also includes a count alleging that Methodist Hospital was negligent in its extension of operating privileges to Drs. Davne and Myers in that it knew or should have known that the

doctors were reputed to be "overly aggressive and indiscriminate surgeons who were the subject of numerous lawsuits and whose medical judgment was in question, and despite the fact that Methodist's Physician Review Board unanimously rejected the extension of privileges to Defendants, Myers and Davne."

On or about May 20, 1994, plaintiff served a Notice of Deposition on Methodist Hospital for the oral deposition of Kevin Hannifan, Methodist's Chief Executive Officer and a corporate designee on June 21, 1994 and directing the witnesses to bring with them: "(a) copies of any hospital or institutional review board or members of the institutional review board and/or surgeons and/or administrators records, memoranda, correspondence, minutes of meetings and/or any other documentation relevant to the consideration, approval and/or use of VSP Plates or Screws and/or any other pedicle screw system;" and "(b) copies of any and all hospital, administrative, institutional review board or other records, memoranda, correspondence, minutes of meetings and/or any other documentation relevant to the review, consideration, approval, grant of privileges or other communications regarding Dr. Sanford Davne and Dr. Donald Myers." In addition, via correspondence dated June 24, 1994 addressed to Methodist's attorney, plaintiff's counsel stated that he wished to depose "a corporate designee from Methodist Hospital most knowledgeable in the following areas:

1. Hospital policy, practices and procedures regarding the approval and use of surgical implants and investigational devices in surgery conducted in the hospital during 1992. This person should have eminent knowledge of Methodist Institutional Review Board and the Institutional Review Board's role in the hospital's monitoring and approving the use of surgical implants and investigational devices in surgery in Methodist Hospital during 1992.

2. The consideration, rejection, and/or approval of Dr. Davne and Dr. Myers to be on staff at Methodist. This area of inquiry includes but is not limited to what investigation/evaluation was done of the background of these physicians, their qualifica-

tions, their experience, the type of surgeries that they performed, and all documents, knowledge and information concerning their competency to practice medicine and to perform pedicle screw surgeries which existed prior to the time of Ms. Corrigan's surgery.

3. The investigation, review, or consideration of the use of VSP plates and/or screws in surgery at Methodist Hospital during 1992, including but not limited to all documents, studies, and information supplied to the hospital utilized in the decision to permit such surgeries at the hospital."

In refusing to produce either Mr. Hannifan or a corporate designee for deposition and in moving for a protective order, Methodist Hospital invokes the confidentiality provision of the Pennsylvania Peer Review Protection Act, 63 P.S. § 425.4 and Fed.R.Civ.P. 26(c). Rule 26(c), of course, provides in pertinent part:

"Upon motion by a party from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending ..... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including one or more of the following:

(1) that the disclosure or discovery not be had:

(2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;

(3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;

(4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters.

.  .  .  .  .

■ It has been said that the Peer Review Protection Act, 63 P.S. § 425.1, et seq., was promulgated to serve the legitimate purpose of maintaining high professional standards in the medical practice for the protection of patients and the general public. The Act represents a determination by the legislature that, because of the expertise and level of skill required in the practice of medicine, the medical profession itself is in the best position to police its own activities. *Cooper v. Delaware Valley Medical Center*, 428 Pa.Super. 1, 630 A.2d 1 (1993), *appeal granted*, ―― Pa. ――, 639 A.2d 28 (1994). Section 425.4 of the Act, in turn states:

The proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action against a professional health care provider arising out of the matters *which are the subject of evaluation and review by such committee* and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such committee or as to any findings, recommendations, evaluations, opinions or other actions of such committee or any members thereof; *Provided, however, that information, documents, or records otherwise available from original sources are not to be construed as immune from discovery or use in any such civil action merely because they were presented during proceedings of such committee, nor should any person who testifies before such committee or who is a member of such committee be prevented from testifying as to matters within his knowledge, but the said witness cannot be asked about his testimony before such a committee or opinions formed by him as a result of said committee hearings.*

(emphasis supplied)

■ It is axiomatic that the party objecting to discovery on the basis of privilege has the burden of establishing the existence of that privilege. In determining whether a privilege exists, the district courts look first to *federal* common law but will also give consideration to the state privilege law. *Robinson v. Magovern*, 83 F.R.D. 79, 85

(W.D.Pa.1979) citing, *inter alia, In re Grand Jury Impaneled January 21, 1975,* 541 F.2d 373 (3rd Cir.1976). The Pennsylvania legislature recognized that hospitals, as organizations, are involved in the peer review process and thus there is no doubt that the Peer Review Protection Act applies to hospitals as well as physicians and health care personnel. *Cooper v. Delaware Valley, supra,* 630 A.2d at 9. *See Also:* 63 P.S. § 425.2.

In so considering the Pennsylvania state privilege law raised by the defendant hospital in the instant case, we first find that the Pennsylvania Supreme Court has yet to render its interpretation of the act, and, as observed by the Jefferson County Court of Common Pleas in *Fetterman v. Haba,* 47 D. & C.3d 435 (1987), there is a split among the lower state courts as to what information is protected and what documents are discoverable. *See, e.g.: Fetterman,* at 440 ["doctor's application for hospital staff privileges, the qualifications contained therein and the delineation of privileges granted are protected as are any other documents that become the records of a review committee or are part of the proceedings of the review committee"]; *O'Neill v. McKeesport Hospital,* 48 D. & C.3d 115 (1987) ["findings, recommendations, evaluations or opinions of the Joint Commission on Accreditation of Hospitals generated by health care providers on behalf of the commission, with respect to any review of the practices and procedures governing treatment involving anesthesia or surgery within defendant-hospital are records of a review committee within the meaning of 63 P.S. § 425.4"]; *Bolton v. Holy Spirit Hospital,* 40 D. & C.3d 372 (1984) ["defendant physician's personnel file, notes, correspondence or other communications of any committees or administrative staff and notes, correspondence, complaints, etc. relative to defendant doctor's performance of unnecessary surgery which did not arise from peer review activity are discoverable"]; and *Fowler v. Pirris,* 34 D. & C.3d 530 (1981) ["since the accreditation reports of a hospital are obtainable from the Joint Commission of Hospital Accreditation, they are not protected from discovery by the Peer Review Protection Act and the Act does not prohibit discovery of the defendant doctor's application for hospital staff privileges or of documents reflecting the medical staff and/or governing body's review of the doctor's qualifications for clinical practice in an action for negligence in permitting unqualified medical practitioners to render medical treatment"]. *See Also: Robinson v. Magovern, supra* [Peer Review Protection Act would not be applied to shield from discovery events surrounding denial of staff privileges, including what occurred at meetings of hospital's credentials committee and executive committee, and discovery could be had of nonparty hospitals with respect to open-heart operations performed at such facilities.]

Unlike the Pennsylvania Supreme Court, the Pennsylvania Superior Court has found itself presented with several cases requiring interpretation of the Peer Review Act and it has thus far given the Act a fairly strict interpretation. Like the Common Pleas' decisions, however, the Superior Court recognized that the confidentiality provision of the statute is susceptible of more than one interpretation and that it is therefore incumbent upon the courts to ascertain and effectuate the intention of the General Assembly. *Steel v. Weisberg,* 368 Pa.Super. 590, 534 A.2d 814, 818 (1987), *appeal dismissed,* 525 Pa. 503, 582 A.2d 648 (1990), citing 1 Pa.C.S.A. § 1921(a) and *Hodge v. Hodge,* 513 Pa. 264, 270, 520 A.2d 15, 21 (1986).

In endeavoring to determine the legislative goals behind and in examining the Act's legislative history, the *Steel v. Weisberg* court concluded that it was "clear that the legislature did not intend to provide unlimited protection to persons giving testimony or providing information to peer review organizations," and held that information regarding a letter which contained allegedly defamatory information sent by a dentist to a peer review proceeding, concerning whether that letter was received and to whom it was distributed pertained to "matters within [the proposed witness'] knowledge and therefore fell within the exception to immunity from discovery set forth in Section four of the Act." *Steel,* 534 A.2d at 817.[1]

---

**1.** Two other provisions of the Definitions Section of the Act (found at 63 P.S. § 425.2) are relevant

Similarly, in *Sanderson v. Frank S. Bryan, M.D., Ltd.,* 361 Pa.Super. 491, 522 A.2d 1138 (1987), *appeal denied,* 517 Pa. 624, 538 A.2d 877 (1988), also in endeavoring to ascertain the intention of the legislature, a different panel of the Superior Court additionally noted the importance, under the Pennsylvania Statutory Construction Act, 1 Pa.C.S.A. §§ 1921(a), 1922(2), of giving each provision of the statute its full effect if possible, and of presuming that the legislature intended every word of the statute to be meaningful. Thus, reasoned the *Sanderson* court, the words limiting the peer review privilege must be given effect with the result that while the Act protected proceedings and records of the defendant hospital's peer review committee, it did not prevent the plaintiff in that medical malpractice action from having access to his own medical records as well as any other relevant business records, nor did it preclude persons with first-hand knowledge of the incident from being compelled to testify.

Likewise, in *Atkins v. Pottstown Memorial Medical Center,* 430 Pa.Super. 279, 634 A.2d 258 (1993), the Superior Court agreed with the plaintiff's assertion that the trial court erred in excluding from discovery the contents of an "incident report" that had been prepared for use by a risk manager who sometimes reviewed incident reports with a Quality Assurance Committee, after the plaintiff fell while en route to the bathroom following the administration of his pre-operative shots. In so holding, the court stated:

> to our consideration here. To be sure, "peer review" is defined as meaning
>> "the procedure for evaluation by professional health care providers of the quality and efficiency of services ordered or performed by other professional health care providers, including practice analysis, inpatient hospital and extended care facility utilization review, medical audit, ambulatory care review, claims review, and the compliance of a hospital, nursing home or convalescent home or other health care facility operated by a professional health care provider with the standards set by an association of health care providers and with applicable laws, rules and regulations."
> "Review organization" is said to mean
>> "any committee engaging in peer review, including a hospital utilization review committee, a hospital tissue committee, a health insurance review committee, a hospital plan corporation review committee, a professional health

"After careful review of the purposes to be achieved by the statute [§ 425.4], we conclude that the trial court erred when it excluded evidence of the incident report. This document contained information "otherwise available from original sources." It was not derived from nor part of an evaluation or review by a peer review committee. It was, rather, a report of an incident based on information also available to plaintiffs. As such, the report did not come within the need for confidentiality which the statute was intended to provide. Indeed, it is questionable whether a risk manager is a "review organization" to whom the protection of the statute extends. The report, therefore, was a business record not subject to the confidentiality safeguards of the statute.

██ Applying all of the preceding to the matter now pending before this court, we find that peer review means peer review. Thus, the plaintiff's demand, as presently worded, for "copies of any and all hospital, administrative, institutional review board ... records, correspondence and minutes of meetings relevant to the review, consideration, approval, grant of privileges or other communications regarding Dr. Sanford Davne and Dr. Donald Myers" sought in paragraph 3(b) of the plaintiff's Notice of Deposition addressed to Kevin Hannifan and the Methodist Hospital corporate designee are exempt from discovery by Section 425.4 of the Peer Review Protection Act and the hospital's motion for protective order shall be

> service plan review committee, a dental review committee, a physicians' advisory committee, a nursing advisory committee, any committee established pursuant to the medical assistance program and any committee established by one or more State or local professional societies, to gather and review information relating to the care and treatment of patients for the purposes of (i) evaluating and improving the quality of health care rendered; (ii) reducing morbidity or mortality; or (iii) establishing and enforcing guidelines designed to keep within reasonable bounds the cost of health care. *It shall also mean any hospital board, committee or individual reviewing the professional qualifications or activities of its medical staff or applicants for admission thereto.* It shall also mean a committee of an association of professional health care providers reviewing the operation of hospitals, nursing homes, convalescent homes or other health care facilities.

granted as to those materials. Inasmuch as we see no mention of or legislative intention in the Peer Review Protection Act to protect discussions, notes, records or memoranda concerning the consideration, approval and/or use of surgical hardware including pedicle screw systems, the hospital's motion to preclude discovery of the materials sought in paragraph 3(a) of the said deposition notice is denied.

In determining the discoverability of the remaining materials sought by the plaintiff, however, we are somewhat hampered by the state of the record in this case. Motions of this type, of necessity, require careful case-by-case analysis and the instant motion is no exception. So saying, and in light of the fact that the burden falls upon the party asserting the privilege to demonstrate its applicability, it will be up to Mr. Hannifan and/or Methodist's corporate designee to first certify and/or testify as to (1) the source of his or her knowledge, (2) whether the information and documents sought by the plaintiff derive solely from the proceedings and records of the hospital's peer review committee(s) and (3) that those records and proceedings arose out of matters which are the subject of evaluation and review by those committee(s). Should Mr. Hannifan or the corporate designee be unable to so certify or testify (under oath and subject to the appropriate statutes governing unsworn falsification to authorities), responsive testimony shall be given to the plaintiff's questions and the requested documents and materials shall be produced.