**Rose M. FOULK, Appellee,**

v.

**Bernard R. FOULK, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 5, 2001.
Filed Dec. 17, 2001.

Christopher D. Ferry, Meadville, for appellant.

James R. Irwin, Meadville, for appellee.

Before DEL SOLE, President Judge, McEWEN, President Judge Emeritus, JOHNSON, FORD ELLIOTT, EAKIN, JOYCE, STEVENS, MUSMANNO and ORIE MELVIN, JJ.

MUSMANNO, J.

¶ 1 Appellant Bernard R. Foulk ("Bernard") appeals from an Order adjudging him in contempt for failing to pay his ex-wife, Appellee Rose M. Foulk ("Rose"), one-half of his monthly pension benefits. We affirm.

¶ 2 Rose filed a Complaint in divorce against Bernard on May 31, 1991. At a hearing before a master on January 7, 1999, the parties read into the record an agreement as to the distribution of their marital property ("agreement"). The agreement provided as follows in regard to Bernard's pension under the Pennsylvania State Employees Retirement System (SERS):

> [Bernard] is the owner of a pension through [SERS], and has in fact retired from his employment on March 29, 1997. He currently receives a gross monthly benefit of 1,617 dollars and 27 cents. [Rose], whose date of birth is 12/28/45, has not reached retirement age at this time. However, since the retirement pension is in a pay status, the parties agree that if it is permissible with the retirement system, the gross monthly benefit of [Bernard] shall be divided equally between [Rose] and [Bernard]. [Rose's] counsel shall be responsible for preparing a Qualified Domestic Relations Order, or Approved Domestic Re-

lations Order. In the event [Rose's] age prohibits her from actually receiving one-half of the gross monthly benefit, the parties agree that [Bernard] shall pay alimony in an amount equal to one-half of the gross monthly benefit until such time as [Rose] qualifies to receive her one-half of said gross monthly benefit. Any cost of living increases of any nature whatsoever shall be shared equally between the parties.

N.T., 1/7/99, at 5–6. The trial court entered a divorce Decree on March 12, 1999, in which the trial court ordered that the parties' property be distributed in accordance with the terms of the January 7, 1999 agreement.

¶ 3 On November 3, 1999, Rose filed a Motion to enter a qualified domestic relations order (QDRO) in regard to her entitlement to a portion of Bernard's monthly pension benefits. On the same day, the parties filed a stipulation for the entry of the QDRO, and the trial court issued an Order providing that the parties' stipulation be incorporated, but not merged, into that Order.

¶ 4 On February 18, 2000, Rose filed a Petition for contempt. In her Petition, Rose alleged that, according to SERS, her payments under the QDRO were to begin in January 2000, but that, pursuant to the parties' agreement, payments to her from Bernard's pension were to begin on January 7, 1999, the date of the agreement. Rose alleged that she had requested that Bernard pay her one-half of his pension benefits from January 7, 1999 to January 2000, or $9,884.16, but Bernard had failed to do so. Therefore, Rose requested that Bernard be held in contempt of court for failing to comply with the divorce Decree.

¶ 5 On April 20, 2000, Bernard filed a response to the Petition for contempt, in which he alleged that there was no agreement between the parties that the pay-

ments from Bernard's pension would begin on any date other than the date determined by SERS. The trial court conducted a hearing on the Petition for contempt. No witnesses testified at the hearing. On April 24, 2000, the trial court ordered that Rose was entitled to receive one-half of Bernard's pension, commencing on the day after the date of the parties' divorce Decree. The trial court also awarded Rose counsel fees in the amount of $250.00.

¶ 6 On May 5, 2000, the trial court entered an Order finding Bernard in contempt of the parties' agreement and the divorce Decree. The trial court sentenced Bernard to a prison term of three months and a fine of $1,000. The trial court indicated that Bernard could purge himself of the contempt adjudication by paying Rose the sum of $7,413.00 on or before July 1, 2000. That amount constituted one-half of Bernard's pension benefits from March 12, 1999 through December 31, 1999. The trial court further directed that Bernard pay Rose's attorneys' fees as a condition of purging himself from the trial court's contempt finding. Thereafter, Bernard filed a timely appeal of the May 5, 2000 Order.

¶ 7 On appeal, Bernard raises three issues:

1. Whether the trial court erred in determining that the express language of the parties' agreement required a payment prior to the entry and acceptance of the QDRO by SERS, where Rose's age did not prohibit her from receiving one-half of Bernard's retirement benefit?

2. Whether the trial court erred in finding that Bernard willfully failed to comply with a court order, and, if so, whether the trial court erred in failing to consider whether Bernard has the present ability to comply with the Order?

3. Whether the trial court's setting of a purge condition in the contempt Order precludes an appeal of that Order?

*See* Brief for Appellant at 2–3.

¶ 8 We will first address the issue of the appealability of the trial court's May 5, 2000 Order. That issue was certified to this *en banc* Court for review on April 23, 2001.[1]

¶ 9 This Court will only consider appeals from **final** orders of a trial court. Pa. R.A.P. 341(a). This Court has held that an order finding a party in contempt for failure to comply with a prior order of court is final and appealable, if sanctions are imposed. *Sonder v. Sonder,* 378 Pa.Super. 474, 549 A.2d 155, 159 n. 1, 160 (1988) (*en banc*); *Lachat v. Hinchliffe,* 769 A.2d 481, 488 (Pa.Super.2001); *Steel v. Weisberg,* 368 Pa.Super. 590, 534 A.2d 814 (1987); *Hester v. Bagnato,* 292 Pa.Super. 322, 437 A.2d 66 (1981).

¶ 10 In a fairly recent case, *Sargent v. Sargent,* 733 A.2d 640 (Pa.Super.1999), a panel of this Court reached a different conclusion concerning the appealability of a contempt order. In *Sargent,* the panel concluded that the contempt order therein, which found Sargent in contempt for failing to pay child support, and which sentenced him to six months in prison unless he paid $5,538.80 plus fees within thirty days, was an interlocutory order, because the sanctions were merely "threatened" and had not been actually imposed. *Sargent,* 733 A.2d at 641.

¶ 11 *Sargent,* however, is in conflict with other cases decided by this Court. For example, in *Sonder,* an *en banc* panel of this Court held that the trial court's order directing husband to pay $29,800 "forthwith" and $1,000 in counsel fees and expenses, was interlocutory "as no sanctions were imposed." *Sonder,* 549 A.2d at 159. Notwithstanding that holding, the Court in *Sonder* also found that a separate order directing husband to pay "$10,000 forthwith or [be] commit[ed] to jail for 90 days," was final and appealable.[2] *Id.* at 166. Clearly, the second order imposed sanctions on husband in the form of a jail sentence. However, the second order also contained a purge condition, *i.e.,* that husband pay $10,000 "forthwith."

¶ 12 Similarly, this Court determined that an order finding the defendant in contempt for failing to comply with an order enforcing a settlement agreement, which gave defendant an opportunity to purge himself by paying the settlement sum, but which did not impose sanctions on the defendant, was interlocutory and not appealable. *Hester,* 437 A.2d at 66–67; *cf. Lachat,* 769 A.2d at 488 (holding that an order finding the defendant in contempt and requiring him to pay $450 in counsel fees and one-half the cost of a property survey "on or before the 31st day following this Order" was final and appealable because the order contained both a finding of contempt and a directive to make remedial payment to the plaintiffs for surveyors' fees and attorneys' fees).

¶ 13 In *Steel v. Weisberg,* 368 Pa.Super. 590, 534 A.2d 814 (1987), the trial court entered an order finding the defendant in contempt for failing to answer questions at

1. *See Kulp v. Hrivnak,* 765 A.2d 796 (Pa.Super.2000) (holding that it is incumbent upon this Court to determine, *sua sponte* when necessary, whether the appeal is taken from an appealable order).

2. The court in *Sonder* explained that "[t]here is no question [that] this is an appealable Order as a final contempt Order was entered after hearing in compliance with *Crislip [v. Harshman,* 243 Pa.Super. 349, 365 A.2d 1260 (1976)]." *Sonder,* 549 A.2d at 166. In *Crislip,* this Court set forth the requirements for a civil contempt proceeding.

a deposition, as the trial court had previously directed. *Id.* at 815. The trial court imposed a fine of "$25.00 conditionally" upon defendant. In addition, the trial court directed that the defendant could purge himself of the contempt and the necessity to pay the fine "by answering all questions provided to him . . . ." *Id.* at 816. On appeal, this Court found that the order was final and "immediately appealable," even though the trial court had given the defendant a purge condition. This Court explained as follows:

Although [defendant] was given the opportunity to remove the sanction, such a feature is typical of civil contempt orders, which must contain conditions on the sentence so as to permit the contemnor to purge himself; he must be allowed to carry the keys to the jail in his pocket. Here, no further order would be necessary before the sanction would become effective. The order is properly before us for review.

*Id.* (citations and quotations omitted).

■ ¶ 14 We find the above reasoning by this Court in *Steel* more persuasive than that relied upon by the panel in *Sargent.* When a contempt order that imposes sanctions also contains a purge condition, the purge condition does not transform a final, appealable order into one that is interlocutory. If that were so, a contemnor in a civil contempt action would not be able to appeal the contempt order until he/she was incarcerated or had paid the sums owing as sanctions for contempt. It seems inappropriate and unnecessarily harsh for a contemnor in a civil contempt action to undergo incarceration or fulfill another sanction before this Court will accept an appeal of a contempt order. Rather, we conclude that, for a contempt order to be properly appealable, it is only necessary that the order impose sanctions on the alleged contemnor, and that no further court order be required before the sanctions take effect.

■ ¶ 15 Thus, in the present case, although a purge condition was included in the May 5, 2000 Order (*i.e.*, pay the sum of $7,413 on or before July 1, 2000), the purge condition did not make the Order interlocutory. The purge condition merely allowed Bernard "to carry the keys to the jail in his pocket," and no further order was required for the specified sanctions to become effective. Accordingly, the May 5, 2000 Order was final and appealable.

¶ 16 Bernard next contends that the trial court erred in determining that the parties' agreement required that Bernard pay to Rose one-half of his monthly pension benefits from the date of the entry of the divorce Decree. He asserts that the trial court should have determined whether the parties' agreement was ambiguous, thus requiring the trial court to consider evidence from the parties concerning the agreement. Bernard further argues that the express language of the agreement required no payment by him to Rose until the QDRO was implemented by SERS.

■ ¶ 17 Appellate review of a contempt order is limited to deciding whether the trial court abused its discretion. *McMahon v. McMahon,* 706 A.2d 350, 355 (Pa.Super.1998). The trial court abuses its discretion if, in resolving the issue for decision, it misapplies the law, exercises its discretion in an unreasonable manner, or does not follow legal procedure. *Lachat,* 769 A.2d at 487.

■ ¶ 18 In this case, the parties' agreement did not set forth a specific date for commencement of the payments to Rose from Bernard's pension. The trial court determined, however, in its April 24, 2000 Order, that the payments were to commence on the day after the date of the

parties' divorce Decree. In making that determination, the trial court found significant the following statement, which the trial court made on January 7, 1999, after the parties had placed the terms of their agreement on the record:

> THE COURT: That will conclude the process. The next step is the reporter will transcribe what transpired today [sic], and we will attach that resolution to a proposed divorce decree. When that is done, you all will receive Notice of it, and will proceed to request that the divorce be granted, and in the meantime, proceed with the terms of the agreement as you've entered it today. In other words, start the process of doing the financing, and then the divorce will be entered in due course, and the property will be distributed in due course.

N.T., 1/7/99, at 15. Based on the discussion that took place when the parties entered their agreement on the record, the trial court did not abuse its discretion in deciding that Bernard's payments to Rose of one-half of his pension benefits were to commence on the day after the divorce Decree.

■ ¶ 19 Bernard next contends that the trial court should have conducted an evidentiary hearing on the issue of when the pension payments should have commenced. However, at the April 20, 2000 hearing, the trial court asked both parties whether there was a need for testimony, and the parties agreed that no testimony was needed. N.T., 4/20/00, at 46–47. Thus, Bernard has waived his contention that the trial court should have conducted an evidentiary hearing on this issue. *See* Pa.R.A.P. 301(a) (stating that issues not raised in the trial court are waived for purposes of appeal); *Fenstamakcr v. Fenstamaker*, 337 Pa.Super. 410, 487 A.2d 11 (1985) (holding that the issue raised on appeal, whether the procedural requirements for an adjudication of contempt were met, which was not raised during contempt proceedings in the trial court, was waived).

¶ 20 Next, Bernard argues that the trial court erred in finding that he willfully failed to comply with the requirement that he pay Rose one-half of his monthly pension benefits. He also asserts that the trial court erred in failing to consider whether he had the present ability to comply with the Order.

¶ 21 This argument is without merit. At the April 20, 2000 hearing, Bernard asserted that he had not made payments to Rose before January, 2000 because he believed he was not required to do so under the parties' agreement. Rose argued that Bernard was required to make such payments pursuant to the divorce Decree, which referenced the agreement. Counsel for both parties agreed that it was not necessary for the trial court to take testimony on the issue. N.T., 4/20/00, at 46–47. The trial court then determined that Rose was entitled to receive her portion of Bernard's pension benefits commencing the day after March 12, 1999, the date of the divorce Decree.

■ ¶ 22 Pursuant to the Divorce Code, the trial court may, after a hearing, enter a finding of contempt if a party has failed to comply with an order of equitable distribution or with the terms of an agreement between the parties. 23 Pa.C.S.A. § 3502. Here, the trial court found that Bernard had failed to comply with the divorce Decree because he failed to pay Rose her portion of his pension benefits from March 12, 1999 to December 31, 1999. The record demonstrates that Bernard was aware that the trial court, in accepting the parties' agreement, expected prompt compliance. We find no abuse of discretion in the trial court's finding that Bernard acted

willfully in failing to pay Rose her portion of his pension benefits from March 12, 1999 to December 31, 1999.

■ ¶ 23 Bernard's argument that the trial court failed to consider his ability to pay the delinquent amounts is being raised for the first time in this appeal. Therefore, that issue is waived. *See* Pa.R.A.P. 302(a).

¶ 24 Order affirmed.

¶ 25 ORIE MELVIN, J., files a Dissenting Opinion.

¶ 26 JOYCE, J., joins the Dissenting Opinion.

¶ 27 STEVENS, J., joins the Dissenting Opinion.

ORIE MELVIN, J., Dissenting.

¶ 1 I disagree with the majority that the Order of civil contempt is a final appealable order. Because I find the Order is interlocutory, I respectfully dissent.

¶ 2 An appeal will lie only from a final Order unless otherwise permitted by statute. *Robec, Inc. v. Poul*, 452 Pa.Super. 264, 681 A.2d 809 (1996); 42 Pa.C.S.A. § 742. It is well settled that unless sanctions or imprisonment are imposed, an Order declaring a party to be in contempt is held to be interlocutory and not appealable. *Mrozek v. James*, 780 A.2d 670, 2001 PA Super 199; *Sargent v. Sargent*, 733 A.2d 640, 641 (Pa.Super.1999); *Gaster v. Gaster*, 703 A.2d 513 (Pa.Super.1997); *McManus v. Chubb Group of Insurance Companies*, 342 Pa.Super. 405, 493 A.2d 84 (1985); *Rulli v. Dunn*, 337 Pa.Super. 613, 487 A.2d 430 (1985). Moreover, a threat to impose sanctions in the future is neither final nor appealable. *Genovese v. Genovese*, 379 Pa.Super. 623, 550 A.2d 1021, 1022 (1988).

¶ 3 In determining the finality of a civil contempt order, I believe emphasis should be placed on whether the trial court has enforced the sanction. In the absence of enforcement, I believe this Court is without jurisdiction to engage in appellate review. *See Hester v. Bagnato*, 292 Pa.Super. 322, 437 A.2d 66 (1981) (quashing civil contempt order as interlocutory in absence of imposition of sanctions).

¶ 4 Contrary to the majority, I find *Sargent* persuasive and factually analogous to the instant case. In *Sargent*, the trial court entered an Order finding Father in contempt for non-payment of child support. The Order also imposed a sentence of incarceration of six months unless Father met the purge condition of paying Mother $5,538.00 plus fees within thirty-days. However, prior to the expiration of that thirty-day period, Father filed an appeal. Subsequently, a panel of this Court quashed the appeal finding the order appealed from was interlocutory and unappealable as the threatened sanction had not yet been imposed.

¶ 5 Similarly, in the present case, the trial court entered an Order on May 5, 2000, finding Husband in contempt. The trial court further ordered Husband be incarcerated for a term of three months and pay a fine of $1,000 unless he met the purge condition of paying Wife the sum of $7,413.00 on or before July 1, 2000. Prior to the expiration of this time period and before sanctions were imposed, Husband filed the instant appeal. Accordingly, based upon our holding in *Sargent*, I believe this appeal should be quashed as interlocutory. *Cf. Lachat v. Hinchliffe*, 769 A.2d 481 (Pa.Super.2001) (holding a trial court's order which explicitly imposed sanctions on a finding of contempt final and appealable). *Cf. Griffin v. Griffin*, 384 Pa.Super. 210, 558 A.2d 86 (1989), *appeal denied*, 524 Pa. 621, 571 A.2d 383 (1989) (holding order of contempt final and appealable because appellant did not timely

meet purge condition and sanction of imprisonment was imposed prior to filing of appeal).

¶ 6 Finally, I recognize the decision reached by the majority is also contrary to the holdings in several other jurisdictions. *See Whitworth v. Jones,* 41 S.W.3d 625 (Mo.Ct.App.2001) (holding civil contempt order interlocutory and unappealable when record revealed appellant had not complied with court's order or that enforcement of the order had been sought); *Clark v. Myers,* 945 S.W.2d 702 (Mo.Ct.App.1997) (holding civil contempt order is not final until judgment enforced); *Vowell v. Pedersen,* 315 Ill.App.3d 665, 248 Ill.Dec. 461, 734 N.E.2d 169 (2000) (holding that in order for an appellate court to assume jurisdiction, the contempt order must impose sanctions of some kind upon the contemnor); *see also Jessen v. Jessen,* 5 Neb. App. 914, 567 N.W.2d 612 (1997); *Bayless v. Bayless,* 580 N.E.2d 962 (Ind.Ct.App. 1992); *Bowman v. Bowman,* 493 N.W.2d 141 (Minn.Ct.App.1992); *Madden v. Madden,* 558 P.2d 669 (Wyo.1977); *E.I. duPont de Nemours & Co. v. Universal Moulded Products Corp.,* 189 Va. 523, 53 S.E.2d 835 (1949).

¶ 7 In light of the interlocutory nature of this appeal, I find this Court lacks jurisdiction, and the appeal should be quashed. Accordingly, I respectfully dissent.