J-A24010-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ROBERT ROSIN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PA ASSOCIATES AND GARY | : | |
| SCHMIDT | : | |
| | : | No. 2435 EDA 2023 |
| Appellants | | |

Appeal from the Order Entered August 25, 2023
In the Court of Common Pleas of Bucks County Civil Division at No(s):
2021-01629

MEMORANDUM PER CURIAM:                    **FILED FEBRUARY 25, 2025**

PA Associates and Gary Schmidt (collectively, Defendants) appeal from the order, entered in the Court of Common Pleas of Bucks County, granting Appellant Robert Rosin's (Plaintiff/Rosin) petition to enforce an arbitration award and dismissing, without prejudice, Rosin's petition for contempt seeking sanctions for Schmidt's failure to comply with a trial judge's order. After careful review, we quash in part and affirm in part.

In November 1989, Rosin and Harry Schmidt, Defendant Gary Schmidt's father, formed PA Associates (Partnership), a partnership established "for the purpose of acquiring, owning[,] and developing a factory building on a parcel of real estate" located at 100 Park Avenue, Warminster, Bucks County (Property). Partnership Agreement, 11/9/89, at 1. Plaintiff Rosin owned 20% of the Partnership and Harry Schmidt owned the remaining 80%. The Partnership leased the Property to a company; the rents that were collected

on the Property were distributed between the partners. The partners signed a Partnership Agreement (Agreement), which included the following arbitration provision:

ARTICLE X. **Arbitration**

A. In the event any dispute should arise among the parties, or between the parties in respect to the conduct of the business, its termination or in any other respect regarding the [P]artnership or the rights of any partner, which disputes shall remain unresolved, the same shall be decided and determined by binding Arbitration.

B. Each party, or his heirs, executors[,] or administrators shall appoint one such Arbitrator, and a third Arbitrator shall be chosen by the two Arbitrators aforementioned within five (5) days after their appointment. The award of the majority of such Arbitrators shall be binding and conclusive upon the parties hereto. The appointment of such arbitrators shall be made within five (5) days after receiving notice from any one of the parties hereto, or his personal representatives[,] to make such appointment. The failure of any one of the parties to so appoint an Arbitrator, shall authorize the party or parties making appointments to make an appointment for him, by their majority vote. If such two Arbitrators shall fail or be unable[,] within five (5) days[,] to select a third Arbitrator, then and in such event, any [j]udge of the Common Pleas Court of the county obtaining jurisdiction[,] upon application made by any one of the parties hereto made for that purpose, shall appoint the third Arbitrator.

Partnership Agreement, 11/9/89, at Article X. On August 5, 2016, the parties executed an Amendment to the Agreement that included the following dispute resolution provision:

8. **DISPUTE RESOLUTION BY ADR**

Should an unresolved dispute exist as to any matter arising under this Partnership Agreement, or any other matter relating to the ownership of the real property of the Partnership, **the dispute shall be submitted under its rules of ADR [Alternative**

> **Dispute Resolution] at the Dispute Resolution Institute [DRI], Two Logan Square, Philadelphia, PA 19103.**

Amendment to Partnership Agreement, 8/5/16, at 4 (emphasis added). The Amendment also included a clause stating that if a partner decides to terminate the Partnership, "he shall be deemed to have withdrawn from the Partnership as of the date of such withdrawal." *Id.* at ¶ 6. In the event of withdrawal, payment of that partner's share shall be made as follows: (1) determining the value of the real estate; (2) determining the payment price by totaling the value of the real estate with the then-balance of the bank account, less liabilities; (3) payment shall be made to the withdrawn Partner in accordance with his ownership percentage; (4) payment of the withdrawn Partner's Partnership interest shall be paid in monthly instalments of 1/60th of the withdrawing price, so that after five years the Partnership interest shall have been liquidated in full; (5) any Partnership interest shall bear interest at an annual rate of 1.5% on the unpaid balance; and (6) **the Partnership shall issue its Note to the withdrawing Partner . . . which Note shall be recorded in Bucks County and shall be satisfied upon final payment**." *Id.* at ¶¶ 6(a)-(e) (emphasis added).

Harry Schmidt ultimately transferred his partnership interest to his son, Gary. In September 2018, following disputes between the partners,[1] Rosin

_____

[1] To characterize the parties' relationship as contentious would be an understatement. In addition to the issues surrounding arbitration, Schmidt has also filed lawsuits against Rosin for legal malpractice. *See Schmidt v. Rosin*, 258 A.3d 512 (Pa. Super. 2021) (unpublished memorandum decision).
*(Footnote Continued Next Page)*

demanded arbitration.[2]  Harris T. Bock, Esquire (Arbitrator Bock), was appointed to arbitrate the matter.  *See* Arbitration Order No. 1, 9/26/18. However, Schmidt challenged Arbitrator Bock's ability to fairly and impartially adjudicate the parties' dispute[3] and asked that Arbitrator Bock and Rosin's counsel each be deposed in order to determine any pre-existing relationship that might affect Arbitrator Bock's impartiality.  In Arbitration Order No. 2, Arbitrator Bock denied the discovery request.

In January 2020, Arbitrator Bock determined that Rosin was entitled to $94,000.00 that he had loaned the Partnership, but that Rosin was to remove all claims placed on Partnership Property once Rosin's loan and interest thereon had been satisfied.  Ultimately, Schmidt paid Rosin the monies he was

_____

Arbitrator Bock most appropriately termed this corporate chronicle as "yet another chapter in the ongoing saga of the 21st Century version of the 'Hatfields and McCoys.'" Memorandum and Omnibus Arbitration Order No. 27, 3/5/21, at 1.

[2] Rosin sought the following:  (1) $94,000.00, plus interest, for funds he provided to the Partnership in February 2008; (2) money damages for a loan he made to the Partnership in 2013 (IRA deficiency); and (3) an accounting for rents received by the Partnership.  Schmidt sought removal of all clouds on real property owned by the Partnership that had been placed upon it by Rosin.  *See* Arbitrator's Mixed Findings of Fact, Conclusion of Law, and Arbitration Award, 1/28/20, at B(5)-(8).  Arbitrator Bock specifically found persuasive a February 2008 letter signed by Harry Schmidt acknowledging that the $ 94,000.00 in funds was a loan and was to be repaid within a certain timeframe.  *See id.* at C(16).

[3] Schmidt contended that, because Arbitrator Bock and Rosin's counsel had spoken at continuing legal education seminars sponsored by DRI, there was an established relationship that would prevent Arbitrator Bock from being impartial.

due. However, the parties' dispute continued, with Rosin contending a receiver needed to be appointed to address Schmidt's alleged mismanagement of Partnership operations. In June 2020, Schmidt attempted to withdraw from the Partnership; however, Schmidt later rescinded that withdrawal.

In light of the continuing disputes over the alleged mismanagement of the Partnership and unauthorized spending of Partnership funds, on January 22, 2021, Rosin formally exercised his right to withdraw from the Partnership. In response, the arbitrator entered Arbitration Order No. 24,[4] which valued Rosin's interest in the Partnership's assets at $1,134,323.40 and declared Rosin's partnership withdrawal effective as of Friday, January 22, 2021. *See* Arbitration Order No. 24, 1/27/21, at ¶¶ 1-2. The order also established a payment schedule and directed Schmidt to issue a note (Note) to secure repayment of the purchase price. *Id.* at ¶ 3-5; *see also* Memorandum in Support of Arbitration Order No. 24, 1/27/21, at ¶¶ 19-20(1)-(2). The Note was to be prepared by a non-related attorney, secure "the timely payment of the purchase price," be recorded in Bucks County, and contain customary terms and conditions regarding default. *Id.* The terms of the Note and

_____

[4] Arbitration Orders 3 through 23 are not relevant to this appeal. The majority of those orders concern scheduling matters, discovery issues, disputes relating to Partnership rental payments, discrepancies regarding amount of interest to be paid on final judgment, tax issues on Partnership, encumbrances on the Property, Partnership accounting matters, arbitration fees, potential receivership appointments, and Property appraisals. *See* Appellee's Supplemental Reproduced Record, 7/23/24, at 33b-86b.

language of the Release were "subject to objections by the parties." *Id.* at ¶ 20(3).

Arbitrator Order No. 25, which noted that Schmidt had yet to pay Rosin his 20% share of the 2020 Partnership net profits, ordered Schmidt pay the profits by check on or before February 16, 2021. On March 1, 2021, Arbitrator Bock entered Memorandum and Arbitration Order No. 26 specifying that a *judgment* note, not a promissory note, must be executed in the matter, and further ordered the parties to submit their proposed Note and Release for his consideration by Tuesday, March 2, 2021. *See* Memorandum and Arbitration Order No. 26, 3/1/21, at ¶13.

Subsequently, the parties engaged in a heated debate regarding "the nature of the security interest that [] Schmidt would give [] Rosin to secure the purchase price." Memorandum and Omnibus Arbitration Order No. 27, 3/5/21, at ¶ 10. Schmidt contended that a promissory note sufficed under the Agreement. However, Arbitrator Bock again explained because a promissory note cannot be recorded, such a note would not protect Rosin's interests in the event Schmidt were to default on the note. *Id.* at ¶ 12. As a result, Arbitrator Bock entered Arbitration No. 27 (Order 27), which "adopt[ed] the Judgment Note submitted on behalf of [] Rosin [and] order[ed] such Note be executed by [] Schmidt and delivered to [] Rosin's counsel on

or before Friday, March 12, 2021." *Id.* at ¶ 18.[5] The memorandum

accompanying Order 27 stated:

> In view of the fact that Gary Schmidt has a history of not complying with the Arbitrator's Orders in the past, and in failing to make payments when he was required to do so, **sanctions will be imposed upon Gary Schmidt if he fails to comply with the Arbitrator's Order.**

*Id.* at ¶ 19 (emphasis added).

---

[5] In its entirety, Order 27 states:

> 1. Gary Schmidt shall execute the Judgement Note attached as Exhibit "A" and deliver it to counsel for Robert Rosin on or before Friday, March 12, 2021.
>
> 2. Gary Schmidt shall execute the Mutual Release attached as Exhibit "B" and deliver it to counsel for Robert Rosin on or before Friday, March 12, 2021. The Release may be executed in counterparts.
>
> 3. Robert A. Rosin shall execute the Mutual Release and the Fictitious Name Withdrawal (Exhibit "C") and deliver it to counsel for Gary Schmidt on or before Friday, March 12, 2021. The Release may be executed in counterparts.
>
> 4. If either party fails to execute and deliver the Judgment Note, Mutual Release[,] and Fictitious Name Withdrawal as ORDERED, sanctions may be imposed, upon request, against a non-compliant party in the amount of $500 per day.
>
> 5. As set forth in Order #24, paragraph 9, the Arbitrator shall retain jurisdiction over this matter pending execution of the specified documentation.
>
> 6. In accordance with 4[2 Pa.C.S.A.] § 7321.22(d), Robert A. Rosin shall pay the arbitrator's bill dated March 5, 2021[,] on or before March 17, 2021.

Omnibus Arbitration Order No. 27, 3/5/21.

On March 26, 2021, Schmidt filed a petition to vacate/modify Arbitration Order 27 in the Court of Common Pleas of Philadelphia County. Rosin filed an answer to the petition. On April 6, 2021, Schmidt filed a motion to stay the proceedings. The Honorable Paula Patrick dismissed the motion to stay, without prejudice, for lack of jurisdiction. *See* Order, 4/6/21.

On March 26, 2021, Rosin filed a "Petition to Enforce Order of Arbitration," in the Court of Common Pleas of Bucks County, seeking the following relief:

(1)   order Schmidt to sign the judgment note and deliver it to Rosin within 10 days;

(2)   order Schmidt to sign the mutual release and deliver it to Rosin within 10 days; and

(3)   in the event Schmidt continues to refuse to sign the judgment note and mutual release: (a) order judgment be entered in Rosin's favor and against Schmidt in the amount of $1,134,323.[40], along with an interest rate of 1½%, on a monthly basis for 60 months; and (b) declare that all claims and obligations by and between the parties are released in accordance with the terms of the mutual release.

Petition to Enforce Order of Arbitration, 3/26/21, at 5-6.

On April 9, 2021, following oral argument and in response to Rosin's request for sanctions, Arbitrator Bock entered Memorandum and Arbitration Order No. 28. Order No. 28 concluded that sanctions of $300.00/day against Schmidt would be proper due to his failure to execute the note and release by March 12, 2021. *See* Arbitration Order No. 28, 4/9/21, at ¶ 4 ("Sanctions shall continue at the rate of $300[.00] per day until the Note and Release are executed or a [c]ourt orders otherwise."). In that order, Arbitrator Bock also

stated that "[t]he sanction of $9,000[.00[6]] imposed herein shall be **VACATED** if [Schmidt] executes the Note and Release on or before the close of business on **Tuesday, April 13, 2021**," *id.* at ¶ 7 (emphasis in original), because "[s]uch action by Schmidt would not only vacate the $9,000[.00] Sanction Award, but it would also moot the Philadelphia County and Bucks County actions, as well as conclude the arbitration proceeding." *Id.* at 1 n.1.

On May 4, 2021, Schmidt filed a motion to vacate/modify Arbitration Order No. 28. Rosin filed an answer to that motion. On June 9, 2021, Rosin filed a petition to compel arbitration. Schmidt filed an answer in opposition to the motion to compel.[7]

On July 22, 2021, Judge Patrick entered an order staying the enforcement of Arbitration Order No. 28 pending the outcome of Schmidt's motion to vacate/modify, and, in the event the motion were to be denied, ordered Schmidt to fully comply with Order 27 within 30 days of the date of the denial. On August 26, 2021, Judge Patrick entered an order denying

_____

[6] Daily sanctions in the amount of $300.00 beginning on March 5, 2021, until April 9, 2021, total $9,000.00.

[7] On June 9, 2021, Rosin filed a motion to coordinate the instant actions filed in the Bucks and Philadelphia County Courts of Common Pleas. On August 26, 2021, Judge Patrick transferred Philadelphia County Case No. 210301877 to Bucks County for consolidation with the instant docket, No. 2021-01629, in order to consolidate it with the present action. *See* Pa.R.C.P. 213.1 (actions consolidated in county where first lawsuit originally filed). That transferred case was docketed in Bucks County at Docket No. 2023-02024. Then, on August 25, 2023, Bucks County Court of Common Pleas Judge Brian T. McGuffin ordered that Docket No. 2023-02024 be consolidated with the instant docket.

Schmidt's motion to modify/vacate and, implicitly, ordering him to comply with Order 27.[8]

While a prior appeal was pending in this Court,[9] Rosin filed a contempt petition in January 2023 seeking sanctions of $500.00 per day against Schmidt,[10] plus attorneys' fees and costs, for his "deliberate intentional refusal to" comply with the trial court's orders confirming the arbitrator's orders and his continuing failure to sign the general release or execute the judgment note in defiance of Judge Patrick's July 22, 2021 order. *See* Petition for Contempt, 1/31/23, at ¶¶ 46, 60. When Rosin was unsuccessful in securing payment from Schmidt, he filed another "Petition to Enforce Arbitration Award" in the Bucks County Court of Common Pleas. In that petition, Rosin asked the court to "confirm [] the Memorandum and Arbitration Order No. 28 [entered by]

---

[8] Schmidt field a notice of appeal from Judge Patrick's August 26, 2021 order. However, on December 20, 2021, our Court granted Rosin's application to quash the appeal. *See* Order, 12/20/21.

[9] Although not relevant to the disposition of the instant appeal, we note that on May 10, 2021, Rosin filed a *praecipe* for *lis pendens* for the Property. Defendants filed a petition to strike the *lis pendens*. Rosin filed an answer. On February 17, 2022, the court denied Schmidt's petition to remove the *lis pendens*. Schmidt filed an appeal. On February 3, 2023, our Court quashed Schmidt's appeal as interlocutory. *See Rosin v. PA Assoc., et al*, 797 EDA 2022 (Pa. Super. 2023) (unpublished memorandum decision) (concluding order neither final nor collateral).

[10] Rosin requested that the sanctions accrue from the date the note and release were due, March 12, 2021, through the date of Order No. 28, or April 9, 2021. Arbitrator Bock found this amount to be excessive and, instead, awarded $300/day sanctions for a total of $9,000.00.

Harris Bock, Esquire[,] of the [DRI]; and [enter] judgment in favor of [] Rosin . . . and against [] Schmidt in the amount of $177,000.00." Petition to Enforce, 2/8/23, at ¶¶ 22, 24(a).

On August 25, 2023, Judge McGuffin entered an order granting Plaintiff's petition to enforce the arbitration award and dismissing, without prejudice, Plaintiff's contempt petition. Order, 8/25/23. Specifically, the order:

> afforded [Schmidt] one final opportunity to comply with Judge Patrick's August 26, 2021 [o]rder. Should [Schmidt] continue to refuse to comply with Judge Patrick's [o]rder, [Rosin] may reassert in a new Petition for Contempt, all of the claims contained in the current [p]etition for [c]ontempt, along with any new contemporaneous acts alleged at that time.

*Id.* Defendants filed a timely notice of appeal[11] and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

On appeal, Defendants raise the following issues for our consideration:

(1) Whether the common law [a]rbitrator exceeded the scope of his lawful authority, committed misconduct and/or irregularity when he ordered Schmidt to execute a General Release and a Judgment Note and then ordered daily

_____

[11] In their notice of appeal, Defendants state they are appealing from three orders: (1) the court's February 17, 2022 order denying their motion to strike a *lis pendens*; (2) the court's August 26, 2021 order denying Schmidt's motion to vacate and/or modify arbitration award (control number 21032064) docketed on August 27, 2021; and (3) the court's August 25, 2023 order granting Plaintiff's petition to enforce the arbitration award. On September 28, 2023, Plaintiff filed an application to quash the appeal in this Court, claiming that "the appeals . . . [are] improper, inappropriate, and untimely." Defendants filed answers to the motion. On February 12, 2024, our Court granted Plaintiff's petition to quash the appeals from the August 27, 2021 and February 17, 2022 orders. *See* Order, 2/12/24. The court denied, without prejudice, Rosin's motion to quash the appeal from the court's August 25, 2023 order. *Id.*

- 11 -

punitive financial sanctions for his failure to comply, thus mandating that [a]rbitration [a]wards [Nos.]27 and 28 be vacated and/or modified?

    (2)    Whether the [t]rial [c]ourt abused its discretion and committed an error of law when it granted [the p]etition to [c]onfirm the [a]rbitration [o]rders (improperly captioned "Petition to Enforce the Arbitration Orders") and did not grant the [p]etitions to [v]acate and/or [m]odify [] [a]rbitration [a]wards [Nos.] 27 and 28[,] where the common law arbitrator had engaged in misconduct and/or irregularity:

        (i)    where the arbitrator explicitly refused to disclose or allow discovery on his and opposing counsel's potential and/or actual conflicts of interest or other information that might indicate whether his impartiality might reasonabl[y] be questioned prior to the commencement of the common law [a]rbitration proceedings causing an unjust, inequitable[,] and[/]or unconscionable award;

        (ii)    and [] exceeded his legal authority by ordering a litigant to sign, under threat of severe monetary sanctions, a [g]eneral [r]elease where all disputed claims between the parties had not been resolved and which would eliminate the right to challenge and file an appeal of the [a]ribitration [a]wards;

        (iii)    and [] exceeded his lawful authority by ordering a litigant to sign, under threat of severe monetary sanctions, a Judgment Note using "baseball arbitration[,[12]]" rather than use his independent

---

[12] Baseball arbitration "is a dispute resolution mechanism used in the sport to settle salary disputes between players and teams. It's a process designed to determine a fair and binding salary for a player whose contract negotiations have reached an impasse. In other words, when a player and their team can't agree on a salary figure, they turn to arbitration as the final decision-maker." There are two types of baseball arbitration: salary arbitration and grievance arbitration. The former type, which is the more common form, "primarily deals with salary disputes between players and teams. When a player becomes eligible for arbitration, typically after their first three years in the
*(Footnote Continued Next Page)*

> judgment or analysis to make a reasoned arbitration award;
>
> (iv)    when he ordered severe monetary sanctions against Schmidt when he did not comply with his *ultra vires* [o]rders and where the [a]rbitrator's attempted enforcement of his [o]order is not statutorily authorized or authorize by the arbitration clause in the partnership agreement?
>
> (3)    Whether the [t]rial [c]ourt erred in denying the [m]otion to [s]trike [o]ff the [*l*]*is* [*p*]*endens* where the pleadings filed by Rosin confirmed there is no dispute as to title and ownership of the property known as 100 Park Avenue, Warminster, PA[,] 18974[,] and where Rosin *had already transferred his legal interest in the property to Schmidt and where his pleadings do not seek an ownership interest in the property* and where Rosin admitted in his [a]nswer to the [m]otion that he filed the [*l*]*is* [*p*]*endens* for improper motives by clouding the title and seeking to prevent the sale of the property in violation of ***Michael v. GLD Foremost Holdings, L.L.C.***, 15 A.3d[] 318 (Pa. Super. 2017) [and] ***Psaki v. Ferrari***, 546 A.2d 1127 (Pa. Super. 1988)?[13]

Appellants' Brief, at 7-8 (emphasis in original).

In our Court's February 12, 2024 order quashing Defendants' appeals from the trial court's August 27, 2021 and February 22, 2022 orders, our Court

---

league, they can file for salary arbitration if they can[not] agree on a new contract with their team." The latter type of arbitration, grievance arbitration, "centers on disputes related to the interpretation or application of the Collective Bargaining Agreement (CBA) between Major League Baseball and the Players Association." Such grievances can range from "disciplinary actions to contract-related disputes." ***See*** https://baseballpropicks.com/understanding-baseball-arbitration/#:~:text=At%20its%20core%2C%20baseball%20arbitration%20is%20a%20dispute,player%20whose%20contract%20negotiations%20have%20reached%20an%20impasse (last visited 2/3/25).

[13] Having quashed Plaintiff's appeal from the February 22, 2022 order denying his motion to strike a *lis pendens*, this final issue is moot.

- 13 -

denied, without prejudice, Plaintiff's right to reraise, if properly preserved, his application to quash the instant appeal from the court's August 25, 2023 order. Plaintiff has reraised the issue in his brief. Specifically, he claims that the order is not final because it did not dispose of all claims where it provided Schmidt "one final opportunity" to comply with the arbitrator's order No. 27[14] or seek the imposition of sanctions.[15] **See** Pa.R.A.P. 341(b)(1). Plaintiff further argues that the order is interlocutory, from which no right to appeal exists, **see** Pa.R.A.P. 312, 1311, and that Schmidt has failed to request permission to appeal the interlocutory order.

"Generally, only final orders are appealable, and final orders are defined as orders disposing of all claims and all parties." **Spuglio v. Cugini**, 818 A.2d 1286, 1287 (Pa. Super. 2003). **See also** Pa.R.A.P. 341(b)(1) ("A final order is any order that . . . disposes of all claims and of all parties, or is entered as a final order pursuant to [Pa.R.A.P. 341(c)]"). "The finality of an order is a

---

[14] Instantly, Order 27 required Schmidt to execute the Judgment Note and deliver it to Rosin's counsel on or before Friday, March 12, 2021. The memorandum accompanying Order 27 provided that:

> In view of the fact that Gary Schmidt has a history of not complying with the Arbitrator's orders in the past, and in failing to make payments when he was required to do so, **sanctions will be imposed upon Gary Schmidt if he fails to comply with the Arbitrator's Order.**

Memorandum to Arbitration Order #27, 3/12/21 (exhibit 33) (emphasis added).

[15] The sanctions imposed by Arbitrator Bock were incorporated into Judge Patrick's August 26, 2021 order.

judicial conclusion [that] can be reached only after an examination of its ramifications. If the practical effect of an order is to put an appellant out of court by precluding him from presenting the merits of his claim, the order is appealable." **West v. West**, 446 A.2d 1342 (Pa. Super. 1982) (citations omitted).

Pursuant to 42 Pa.C.S.A. § 7342(b):

(b) Confirmation and judgment.--On application of a party made more than 30 days after an award is made by an arbitrator under § 7341 (relating to common law arbitration) the court shall enter an order confirming the award and shall enter a judgment or decree in conformity with the order[.]

42 Pa.C.S.A. § 7342(b).

Under Pa.R.A.P. 311(a)(8), "[a]n appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from [an] . . . order that is made final or appealable by statute or general rule, even though the order does not dispose of all claims and of all parties." Pa.R.A.P. 311(a)(8). Pursuant to 42 Pa.C.S.A. § 7320, "an appeal may be taken from . . . [a] court order confirming . . . an [arbitration] award." **Id.** at § 7320(a)(3). An appeal under section 7320(a)(3) "shall be taken in the manner, within the time[,] and to the same extent as an appeal from a final order or court in a civil action." **Id.** at § 7320(b).

While the instant order confirms the arbitrator's award, it also gives Schmidt "one final opportunity" to comply with the arbitrator's order and, if he does not comply, Rosin can "seek the imposition of sanctions." It is well-established that unless sanctions are imposed, an order declaring a party in

contempt is interlocutory. *See McManus v. Chubb Group of Ins. Cos.*, 493 A.2d 84, 86 (Pa. Super. 1985).

In *Foulk v. Foulk*, 789 A.2d 254 (Pa. Super. 2001) (en banc), our full court concluded that "for a contempt order to be properly appealable, it is only necessary that the order impose sanctions on the alleged contemnor, and that no further court order be required before the sanctions take effect." *Id.* at 258. In that case, the trial court sentenced the Appellant to a three-month term of imprisonment and a $1,000.00 fine for failing to comply with the parties' marital property settlement agreement and divorce decree. However, the trial court indicated that Appellant could purge himself of the contempt finding by: (1) "paying [Appellee] the sum of $7,413.00 on or before [a date certain and (2)] pay[ing Appellee's] attorneys' fees as a condition of purging himself from the trial court's contempt finding." *Id.* Thus, because the purge condition allowed the appellant to effectively "carry the keys to the jail in his pocket, and no further order was required for the specified sanctions to become effective," the order was considered final and appealable. *Id.*

Recently, in *McDaniel v. Kendall Custom Homes, LLC*, 791 WDA 2023 (Pa. Super. 2023) (Table),[16] our Court concluded that a contempt order in which the trial court expressly declined to impose sanctions, but which included a purge condition, was interlocutory because "a further court order would be required to impose sanctions if Appellants fail to satisfy the purge

_____

[16] *See* Pa.R.A.P. 126(b) (non-precedential decisions filed after May 1, 2019, may be cited for persuasive value).

- 16 -

conditions." ***Id.*** at *7 n.6. In that case, the trial court's contempt order stated:

> 1. [Appellants] are in contempt of my February 13, 2023[,] order **and shall purge themselves of contempt** by:
>
>> a. within 30 days removing any obstructions to the full and complete use of the entire driveway by [the McDaniels], including any flowerbeds;
>>
>> b. not parking [Appellants'] vehicles or allowing any vehicles to be parked on the driveway;
>
> 2. [The McDaniels] also are prohibited from parking their vehicles or allowing any vehicles to be parked on the driveway;
>
> 3. [The McDaniels'] use of the driveway is not limited to walking to and from their property; [the McDaniels] have the right to use the driveway for the same purposes [Appellants] use it for;
>
> 4. **The sanctions [the McDaniels] requested are denied.**

***Id.*** at *4-*5 (emphasis in original). ***See also Lachat v. Hinchliffe***, 769 A.2d 481 (Pa. Super. 2001) (order finding defendant in contempt for failing comply with order enforcing settlement agreement, but including opportunity for defendant to purge himself by paying settlement sum, interlocutory because order did not impose sanctions on defendant).

Instantly, Judge McGuffin's August 25, 2023 order not only denied Rosin's contempt petition and gave Schmidt "one final opportunity" to comply with Judge Patrick's August 26, 2021 order, but it also specifically stated that if Schmidt continued to be non-compliant, **Rosin "may reassert in a new Petition for Contempt, all of the claims contained in the current [p]etition for [c]ontempt, along with any new contemptuous acts alleged at that time**." Order, 8/25/23 (emphasis added). Since Rosin was

- 17 -

required to file another contempt petition to seek sanctions against Schwartz, it follows that a further court order granting that request would be required before the sanctions would take effect. ***Foulk***, ***supra***. Thus, the contempt portion of the court's order is interlocutory. ***Id.***; ***McDaniel***, ***supra***. ***See also Rulli v. Dunn***, 487 A.2d 430, 431 (Pa. Super. 1985) (order not final because it ordered appellant to comply with order within ten days or face sanctions in future).

"Although this Court has often repeated the refrain that sanctions must be imposed before an order is final and appealable, [] there is often more nuance to the cases beyond a mere lack of sanctions." ***K.M.G. v. H.M.W.***, 171 A.3d 839, 842 (Pa. Super. 2017). Here, while the contempt portion of the court's August 25, 2023 order is not final, and, thus, not appealable, we are still left with the portion of the order that confirms the parties' arbitration order which, by statute, is final. ***See*** 42 Pa.C.S.A. § 7320(a)(3). Accordingly, we will confine our appellate review to Schmidt's issues relating to the confirmation of Order 27. ***See Roxy v. Honey, LLC v. Richland Mill, LLC***, 1721 EDA 2023 (Pa. Super. 2024) (Table) (court quashed appeal in part, but reviewed, on merits, portion of appeal where collateral order doctrine applied to remaining claim); ***see also B.A.O. v. M.A.O.***, 239 A.3d 94 (Pa. Super. 2020) (Table) (court quashed, in part, appeal relating to non-final spousal support and affirmed, in part, appeal relating to child support).

"An agreement to arbitrate a controversy is presumed to be an agreement to submit to common law arbitration[,] unless the agreement is in

writing and expressly provides for arbitration pursuant to the Uniform Arbitration Act [(UAA)] or another statute." ***Bucks Orthopaedic Surgery Assoc. v. Ruth***, 925 A.3d 868, 871 (Pa. Super. 2007). Here, the parties' Agreement and the Amendment thereto required them to submit disputes to arbitration, and, in particular, the DRI. Nothing in the record indicates that the parties agreed to statutory arbitration under the UAA or otherwise. Thus, this case is controlled by common law arbitration principles. ***Bucks Orthopaedic***, ***supra***.

Arbitration agreements are declared by statute to be valid, enforceable, and irrevocable. ***See*** 42 Pa.C.S.A. § 7303. It is well-established in Pennsylvania, that common-law arbitrators are the final judges of law and fact and an arbitration award will not be reversed for a mistake of either. ***Gargano v. Terminix Int'l Co., L.P.***, 784 A.3d 188, 193 (Pa. Super. 2001) (citations omitted). Rather, in an appeal from a common law arbitration award, the appellant must demonstrate by clear, precise and indubitable evidence "that [he] was denied a hearing or that fraud, misconduct, corruption, or other irregularity caused . . . an unjust, inequitable or unconscionable award." ***U.S. Claims, Inc. v. Dougherty***, 914 A.2d 874, 876 (Pa. Super. 2006) (citation omitted). "An order confirming a common law arbitration award will be reversed only for an abuse of discretion or an error of law." ***Foster v. Nuffer***, 286 A.3d 279, 284-85 (Pa. Super. 2022).

Schmidt claims the trial court erred in confirming the arbitration award where misconduct and irregularity infiltrated the arbitration process.[17]   In particular, he alleges that Arbitrator Bock:  (1) failed to disclose conflicts of interest; (2) exceeded his authority by ordering him to sign release; (3) exceeded his authority by ordering "baseball arbitration;" and (4) exceeded his authority by coercion and ordering extreme sanctions.  Schmidt contends that Arbitrator Bock, before commencement of the arbitration proceedings, "explicitly refused to disclose or allow discovery on his and opposing counsel's potential and/or actual conflicts of interest or other information that might indicate whether his impartiality might reasonably be questioned[.]"  Appellant's Brief, at 6.

"[An] arbitrator's authority is restricted to the powers the parties have granted [him] in the arbitration agreement[.  Thus,] we may examine whether the common law arbitrator exceeded the scope of his authority."  **Gargano**, 784 A.3d at 193 (citations omitted).  Here, Arbitration Order No. 1 states that jurisdiction of the parties' dispute "rests with the **Dispute Resolution Institute**."  Arbitration Order No. 1, 9/26/18 (italics and emphasis in original).

---

[17] Again, on July 22, 2021, Judge Patrick entered an order staying the enforcement of Arbitration Order No. 28 pending the outcome of Schmidt's motion to vacate/modify, and, in the event the motion were to be denied, ordering Schmidt to fully comply with Order 27 within 30 days of the date of the denial.  On August 26, 2021, Judge Patrick entered an order denying Schmidt's motion to modify/vacate and, implicitly, ordering him to comply with Order 27

With regard to Schmidt's claim that there was an established relationship between Arbitrator Bock and Rosin, we note that in order to succeed on a claim, Schmidt must show "a direct relationship between a party to an arbitration proceeding and a designated arbitrator . . ., such as the existence of a prior employer-employee or attorney-client relationship, before the requisite partiality of that arbitrator is established." *Land v. State Farm Mut. Ins. Co.*, 600 A.2d 605, 607 (Pa. Super. 1991). In *Shasteen v. ABC Phones of North Carolina, Inc.*, 266 A.3d 621 (Pa. Super. 2021) (Table), the appellants claimed a conflict of interest where "averments included in an advertisement for a legal textbook authored by [the a]rbitrator" indicated that the arbitrator served as the CEO of a company that had a continuing fiduciary relationship with appellee, and where the arbitrator had allegedly worked for one of appellee's wholly-owned subsidiaries. *Id.* at *9. On appeal, our Court agreed with the trial court, concluding that the "'very remote nature' of any relationship between [the arbitrator and a]ppellees did not satisfy the standard for demonstrating impartiality." *Id.* at *10-*11.

Instantly, Schmidt contends that, because Rosin's counsel had spoken at continuing legal education seminars sponsored by DRI, which is operated by Arbitrator Bock, there was a "longstanding personal business relationship that need[s] to be explored[.]" Answer to Motion for Protective Order, 6/16/21, at ¶ 38. Schmidt argues that Arbitrator Bock, Rosin's counsel, and Rosin, himself, were required to disclose this relationship and any potential

conflicts of interest so that he could determine "whether any financial or personal partiality and/or bias existed." Appellant's Brief, at 21.

The fact that Rosin's attorney spoke at a legal seminar sponsored by DRI does not establish a direct relationship between Arbitrator Bock and Rosin's attorney or prove that Arbitrator Bock was anything but fair and impartial. *See Gwin Engineers, Inc. v. Cricket Club Estates Dev. Grp.*, 555 A.2d 1328, 1329 (Pa. Super. 1989) ("for an aggrieved party to prevail on the[] ground[ that an arbitrator was biased], actual fraud must be shown, involving collusion with one of the parties, or misconduct intended to create a fraudulent result."). At most, the parties maintained a professional relationship. Accordingly, we do not find that there was any irregularity or misconduct in the arbitration process where Schmidt has failed to establish the required partiality to succeed on his underlying claim. *Land*, *supra*; *Sheehan*, *supra*.

Schmidt also contends that Arbitrator Bock exceeded his authority by "ordering him to sign, under threat of severe monetary sanctions, a [g]eneral [r]elease where all disputed claims between the parties had been resolved and which would eliminate the right to challenge and file an appeal of the [a]ribtration [a]wards." Appellant's Brief, at 7. Schmidt also contends that Arbitrator Bock exceeded his authority by ordering him to sign, "under threat of severe monetary sanctions, a [j]udgment [n]ote using 'baseball arbitration' rather than use his independent judgment or analysis to make a reasoned arbitration decision." Appellant's Brief, at 7.

In his appellate brief, Rosin acknowledges that Schmidt has made all required periodic payments to him, thus rendering the execution of a Note and Release unnecessary to protect his interests. *See* Appellee's Brief, at 28 n.19 ("Gary Schmidt has paid Robert Rosin all periodic payments of monies due and owing with respect to the buyout. As such, there is no need, at this point, for any Judgment Note to secure the interest of Robert Rosin in the warehouse."). As a result, this issue is moot. *See M.B.S. v. W.E.*, 232 A.3d 922, 927 (Pa. Super. 2020) ("An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case of due to an intervening change in the applicable law.").

Finally, Schmidt argues that the trial court erred in confirming the arbitration award where Arbitrator Bock "ordered severe monetary sanctions" against him despite the fact that the arbitrator was not authorized to do so by statute or the parties' arbitration clause in the Partnership Agreement. Rather, he contends that only the "constitutionally authorized courts of Pennsylvania" have the authority to enforce an arbitration award by imposing financial sanctions. Petition to Vacate and/or Modify Arbitration Award No. 28, 5/5/21, at ¶ 16; *see also* Appellant's Brief, at 35-36. Moreover, Schmidt claims that the sanctions imposed by Arbitrator Bock in Arbitration Order No. 28 amount to punishing him for exercising his right to appeal Arbitration Order 27. *Id.* at ¶ 11. We disagree.

Whether a common law arbitrator has the authority to impose sanctions on a party for failure to abide by the terms of common law arbitration orders

appears to be an issue of first impression in this Commonwealth. Our Supreme Court has addressed an arbitrator's ability to impose sanctions for a party's failure to comply with a subpoena. In *City of Philadelphia v. FOP Lodge No. 5 (Breary)*, 985 A.3d 1259 (Pa. 2009), the Supreme Court concluded that an arbitrator violated the City's due process rights when the arbitrator's sanction essentially precluded the City from presenting its case-in-chief—effectively amounting to a constructive dismissal. The Court came to its holding after concluding that the City's actions did not constitute willful misconduct or bad faith and that the prejudice suffered by the FOP and Grievant was sufficiently cured by the City's subsequent actions "which [happened] immediately after recognizing [its] mistake." *Id.* at 1274.

Here, the circumstances underlying Arbitrator's Bock's imposition of sanctions are significantly different from the facts in *Breary*. In this case, the arbitrator's order did not put Schmidt out of court or effectively dismiss his case. Instead, it was used as a tool to compel him to comply with several arbitration orders that had been entered in an effort to finalize Rosin's payout of the Partnership, which included his ownership interest in the purchase price of the Property.

Normally, a common law arbitrator has the authority to decide all matters necessary for disposition of the claims. *Brennan v. General Accident Fire & Life Assurance Corp.*, 574 A.2d 580, 583 (Pa. 1990). Moreover, "[i]n the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose

to exclude the claim from arbitration can prevail." ***Provenzano v. Ohio Valley Gen. Hosp.***, 121 A.3d 1085, 1096 (Pa. Super. 2015) (citation omitted). "Unless the parties impose some limitation on the arbitrator's authority, the arbitrator may decide all matters necessary to dispose of any disputed claims subject to arbitration and[] the court may not impose any restrictions *sua sponte*." ***Id.***

Since common law arbitration is only reviewable for fraud, misconduct, or some type of irregularity that causes the arbitrators to issue an unjust, inequitable, and unconscionable award, ***U.S. Claims***, ***supra***, we conclude that Schmidt is entitled to no relief. The imposition of sanctions, or in this case the *threat* to impose sanctions,[18] was necessary to effectuate the buyout process for the Partnership and to safeguard Schmidt from expending any money due Rosin. ***Provenzano***, ***supra***. Because the Amendment to the parties' Agreement contained a broad arbitration provision covering any "unresolved dispute . . . arising under th[e] Partnership Agreement, or any other matter relating to the ownership of the real property of the Partnership," ***see*** Amendment to Partnership Agreement, 8/5/16, at 4, we find that Arbitrator Bock had the authority to impose sanctions in order to resolve the ongoing dispute between the parties and finalize Rosin's withdrawal from the Partnership. ***See id.*** at ("A 'broad' arbitration clause in a contract is one that

---

[18] Again, we have determined this portion of the order from which Schmidt appeals is interlocutory and requires quashal.

is unrestricted, contains language that encompasses all disputes which relate to contractual obligations, and generally includes all claims arising from the contract regardless of whether the claim sounds in tort or contract."), citing ***Smay v. E.R. Stuebner, Inc.***, [] 864 A.2d 1266, 1276 (Pa. Super. 2004).

Affirmed in part; quashed in part. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/25/2025